Jack R. ARCHER and J.R. Hamilton, Appellants,

v.

BILL PEARL DRILLING COMPANY, INC., Appellee.

No. 16811.

Court of Appeals of Texas, San Antonio.

June 29, 1983.

Larry G. Hyden, Corpus Christi, Eugene D. Stewart, Carrizo Springs, for appellants.

Ted Roberts and M.W. Meredith, Jr., Corpus Christi, for appellee.

Before ESQUIVEL, BUTTS and REEVES, JJ.

## OPINION

ESQUIVEL, Justice.

This is an appeal from an order overruling two pleas of privilege.

Appellee Bill Pearl Drilling Company (Pearl Drilling) filed suit in Duval County, Texas, against appellants Jack R. Archer (Archer) and J.R. Hamilton (Hamilton) for recovery of damages caused by the alleged negligence and fraud of Archer and Hamilton. Additionally, Pearl Drilling sought a declaratory judgment for construction of a written contract between Pearl Drilling and Hamilton, and for construction of the Deceptive Trade Practices Act, Tex.Bus. & Com.Code Ann., § 17.01 et seq. (Vernon 1968) and a declaration of rights thereunder. Archer, a resident of Nueces County, Texas, and Hamilton, a resident of Dimmit County, Texas, each filed a plea of privilege seeking transfer of the suit to Nueces County and Dimmit County, respectively. Pearl Drilling filed a controverting affidavit to Archer's plea of privilege relying upon Tex. Rev.Civ.Stat.Ann. art. 1995, §§ (5), (7), (9a) and (29a) (Vernon 1964)[1] and a controverting affidavit to Hamilton's plea of privilege relying upon subdivisions 5, 7, and 9a. Archer filed his first supplemental plea of privilege denying joint venture or vicarious liability as alleged by Pearl Drilling in its

1. Mention hereinafter of a particular subdivision number refers to that subdivision of the general venue statute. Tex.Rev.Civ.Stat.Ann. art. 1995.

original petition and in its controverting affidavit to his plea of privilege.

The parties agreed to hold a simultaneous hearing on both pleas of privilege. Pearl Drilling relied on subdivision 9a to hold venue in Duval County as to Hamilton and relatedly to hold venue as to Archer as a necessary party under subdivision 29a. It presented evidence to the court on the alleged negligent acts which occurred in Duval County and produced damages to Pearl Drilling. The court overruled both pleas of privilege and retained venue in Duval County. It is from this judgment that Archer and Hamilton prosecute this appeal.

No findings of fact and conclusions of law were requested and none were filed.

Archer and Hamilton have filed a joint appellant's brief and set out therein the following points of error:

## POINTS OF ERROR

### Point of Error No. 1

The Honorable Trial Court erred in overruling the Plea of Privilege of Appellant Hamilton because venue of the controversy and subject matter made the basis of the instant suit has previously been determined to lie in Dimmit County, Texas and said previous adjudication of venue is *res judicata* as to the issue of venue of the instant suit.

### Point of Error No. 2

The Honorable Trial Court erred in overruling the Plea of Privilege of Appellant Archer because venue of the controversy and subject matter made the basis of the instant suit has previously been determined to lie in Dimmit County, Texas and said previous adjudication of venue is res judicata as to the issue of venue of the instant suit.

### Point of Error No. 3

The Honorable Trial Court erred in overruling the Plea of Privilege of Appellant Hamilton and the Plea of Privilege of Appellant Archer because there is no evidence that either Appellant Archer or Appellant Hamilton owed a "duty" or breached a "duty" to Appellee Pearl Drilling with respect to any damages suffered by Appellee Pearl Drilling.

### Point of Error No. 4

The Honorable Trial Court erred in overruling the Plea of Privilege of Appellant Hamilton and the Plea of Privilege of Appellant Archer because there is insufficient evidence that either Appellant Archer or Appellant Hamilton owed a "duty" or breached a "duty" to Appellee Pearl Drilling with respect to any damages suffered by Appellee Pearl Drilling.

### Point of Error No. 5

The Honorable Trial Court erred in overruling the Plea of Privilege of Appellant Archer because Appellant did not fulfill its burden of pleading and proof required by subdivision 29a of art. 1995 to maintain venue, as to Appellant Archer, in Duval County, Texas.

### Point of Error No. 6

The Honorable Trial Court erred in overruling the Plea of Privilege of Appellant Archer because Appellee did not fulfill its burden of pleading and proof under any exception to the rule that permits Appellant Archer to insist upon venue in the county of his residence, Nueces County, Texas.

Points of error numbers one and two are directed to the applicability of *res judicata* upon the issue of venue. We will, therefore, discuss them together.

Archer and Hamilton contend that the instant suit involves the same subject matter as a suit filed by Pearl Drilling against Hamilton in Dimmit County, Texas prior to the filing of the instant suit in Duval County; that in the Dimmit County suit the trial court, after a plea of privilege hearing, established venue in Dimmit County. Therefore, they argue that the principles of *res judicata* apply to the determination of venue in the Dimmit County suit. In support of their contention, Archer and Hamil-

ton rely on *Royal Petroleum Corp. v. McCallum,* 134 Tex. 543, 135 S.W.2d 958 (1940); *Helfer v. Texas Employers' Insurance Association,* 467 S.W.2d 687 (Tex.Civ. App.—San Antonio 1971, no writ); *Gonzalez v. Burns,* 406 S.W.2d 527 (Tex.Civ.App. —San Antonio 1966, no writ); *Dallas Joint Stock Land Bank v. Webb,* 48 S.W.2d 434 (Tex.Civ.App.—San Antonio 1932, writ dism'd w.o.j.); *Carter v. Calhoun,* 6 S.W.2d 191, (Tex.Civ.App.—Beaumont 1928, no writ). They further contend that under the rule set out in *Pinney v. Cook,* 558 S.W.2d 33 (Tex.Civ.App.—Corpus Christi 1977, no writ) and *Southwestern Investment Co. v. Gibson,* 372 S.W.2d 754 (Tex.Civ.App.—Fort Worth 1963, no writ), the addition of Archer in the instant suit is of no consequence in determining the applicability of *res judicata.* Additionally, they contend that the fact that the Dimmit County suit originally sought only a declaratory judgment does not deter the applicability of *res judicata* and does not cause the Dimmit County suit to be upon a subject matter different from that of the instant suit. In support of this contention they cite *Hagemeister v. Vanity Fair Properties,* 503 S.W.2d 879 (Tex.Civ. App.—Tyler 1973, writ dism'd w.o.j.).

Archer and Hamilton's reliance on *Carter v. Calhoun, Dallas Joint Stock Land Bank v. Webb, Gonzalez v. Burns, Helfer v. Texas Employers' Insurance Association and Royal Petroleum Corp. v. McCallum,* is misplaced. In all of those cases the judgment of the trial court on the plea of privilege had reached its state of finality either by failure to appeal or by dismissal of the suit after the judgment of the trial court on the plea of privilege.

It is undisputed that in the Dimmit County suit an appeal was perfected to this Court by Pearl Drilling and the ruling of the trial court in that suit that venue is proper in Dimmit County is the subject of cause number 16646, on appeal now pending in this Court.

■ The rule in Texas is that an appeal from a judgment prevents its operation as *res judicata. Ray v. Hasley,* 214 F.2d 366, 368 (5th Cir.1954). It has been well settled that a judgment is deprived of that finality necessary to make it admissible in evidence on the basis of a plea in bar in support of the right or defense declared by it so long as there is an appeal pending either upon a supersedeas bond or cost bond. The effect of such an appeal deprives a judgment of that finality of character necessary to entitle it to admission in evidence in support of the right or defense declared by it. *Houston Oil Co. of Texas v. McCarthy,* 245 S.W. 651, 653 (Tex.Comm'n App.1922, judgment adopted); *Texas Trunk R. Co. v. Jackson,* 85 Tex. 605, 22 S.W. 1030, 1031 (1893). We conclude that the reasoning which would deprive a judgment of a trial court pending review by appeal or writ of error of that finality which would authorize its admission in evidence in support of a right or defense declared by the judgment, would apply with equal force to a judgment of a trial court in a plea of privilege hearing pending determination on appeal, such as is the case in the Dimmit County suit. *See Gilbert v. Fireside Enterprises, Inc.,* 611 S.W.2d 869 (Tex.Civ.App.— Dallas 1980, no writ). The appeal of the Dimmit County judgment prevents its operation as *res judicata.* Archer and Hamilton's points of error numbers one and two are overruled.

Points of error numbers three, four, five and six are directed to the proof presented by Pearl Drilling in support of its controverting affidavit to Hamilton's pleas of privilege and to Archer's plea of privilege. They will be discussed together.

■ Under the provisions of subdivision 9a, Tex.Rev.Civ.Stat.Ann. art. 1995, in order for Pearl Drilling to defeat Archer and Hamilton's pleas of privilege to be sued in their respective domiciliary county the burden was on Pearl Drilling to plead and prove by a preponderance of competent evidence that this case comes within the enumerated statutory exception to the general rule that a defendant must be sued in the county of his domicile. *See Compton v. Elliot,* 126 Tex. 232, 88 S.W.2d 91, 93 (1935). In its pleadings Pearl Drilling set out three basic causes of action, namely: (1) negli-

gence on the part of Hamilton, or any one under his control that caused the blowout and the loss of drill pipe, blow out prevented damage and loss of rig use; (2) an action based on fraud because of Hamilton's failure to disclose high gas pressure problems in the area of the drilling site prior to the commencement of drilling and in addition, Hamilton's failure to provide an adequate mud program; and (3) a declaratory judgment for the construction of a contract between it and Hamilton and Archer and to determine obligations and liabilities thereunder and for a declaratory judgment for the construction of the Deceptive Trade Practices Act, Tex.Bus. & Com.Code Ann. § 17.01, et seq. (Vernon 1968).

At the plea of privilege hearing Pearl Drilling advised the court that it was directing its proof to the negligent acts which occurred in Duval County, Texas, in order to hold venue against Hamilton in Duval County and relatedly hold venue against Archer as a necessary party.

■■■ The venue facts necessary for a plaintiff to establish by a preponderance of the evidence to sustain venue in a county other than the county of the defendant's residence under subdivision 9a, of article 1995, are:

(1) an act or omission of negligence occurred in the county where suit was filed;

(2) the act or omission was that of the defendant in person, or that of his servant, agent or representative acting within the scope of his employment, or that of the person whose estate the defendant represents as executor, administrator or guardian; and

(3) that such negligence was a proximate cause of plaintiff's injuries.

The general rule is that where, under the exceptions contained in article 1995, a suit is properly maintainable against one defendant in a county other than the county of his residence and the plaintiff therein joins another as defendant and seeks to sustain venue as to him under subdivision 29a, then such suit may be maintained against such other defendant if he is a necessary party. Such other defendant is a necessary party within the meaning of section 29a if the complete relief to which the plaintiff is entitled under the facts of the case as against the defendant properly suable in that county can be obtained only in a suit to which both defendants are parties. *Union Bus Lines v. Byrd,* 142 Tex. 257, 177 S.W.2d 774, 775 (1944). In order to sustain venue a plaintiff must offer proof, independent of any pleadings, which establishes that a defendant as to whom venue is sought to be maintained is a necessary party in the suit with the defendant as to which venue is maintained under some other provision. *Lilly Distributing Co. of San Antonio v. Associated Milk Producers, Inc.,* 553 S.W.2d 2, 4 (Tex.Civ.App.—El Paso 1977, no writ).

■■■ On appeal from an order overruling a plea of privilege every reasonable intendment must be resolved in favor of the trial court's judgment. Further, when no findings of fact and conclusions of law are filed, the trial court's judgment implies all necessary fact findings in support of its judgment. In reviewing the record to determine if there is any evidence supporting the judgment and its implied findings, it is proper to consider only the evidence favorable to the issue and disregard all evidence or inferences to the contrary. *Carter v. William Sommerville & Son, Inc.,* 584 S.W.2d 274, 276 (Tex.1979); *Goodyear Tire & Rubber Co. v. Jefferson Construction Co.,* 565 S.W.2d 916, 918 (Tex.1978).

With these rules in mind we will first consider the applicability of section 9a, and then the applicability of section 29a.

The evidence presented at the plea of privilege hearing is set out hereafter in the light most favorable to the judgment.

Pearl Drilling introduced into evidence, without objection, the drilling contract executed on October 31, 1979, between Hamilton as operator and Pearl Drilling as contractor, for the drilling of Cuellar No. 2 Well in Duval County, Texas, to a maximum depth of 6500 feet commencing after

November 15, 1979. The witness Robert Pearl, testifying for Pearl Drilling, testified that on December 23, 1979, Pearl Drilling moved its rig to the location to start operations. In the early morning hours of January 6, 1980, he was awakened by Hamilton and advised to meet Hamilton at the well site because Hamilton had ordered drilling operations ceased due to evidence of gas in the drilling mud. Upon arrival at the well site he was advised by Hamilton that he, Hamilton, had ordered the driller to close the blow out preventer rams. Robert Pearl considered Hamilton in charge when he got to the well site; some time during that day Archer came to the well site in company with Joe Mueller, an engineer, and they all conferred with Hamilton. In an attempt to "circulate" the well, and to prevent further seepage of gas out of the flow line attached to the blow out preventer, heavier drilling mud was pumped from the mud pits to the stand pipe, down the drill pipe and out the bit, circulating mud out of the hole. Robert Pearl further testified that this was the proper and accepted method of attempting to stop an abnormal gas flow and that it took place from 4:00 a.m. to 4:00 p.m. on January 6, 1980. That not all mud pumped in came back out, that some mud was lost in some formation below the surface pipe; that they were getting fluid back consisting of some mud, sand and some water. In order to overcome a restriction which prevented the drill pipe from turning they had to pull up the pipe to a level of 2300 feet; the restriction was overcome and the drill pipe was able to turn. They reopened the rams on the blow out preventer. However, the well became dormant and they ceased operations because they ran out of materials and had to wait for them to be delivered to the well site. At approximately 9:00 p.m. on the night of January 6, 1980, there was no sudden explosion or blowing out of sand and mud out of the hole, but they started to get gas to the surface; the well started "bleeding gas". The rams on the blow out preventer were again closed. Robert Pearl went to sleep at the well site and according to him, the person in charge during the night was Joe Mueller. The next morning the problem of bleeding gas still existed and he was advised by Joe Mueller to commence pumping barrels of mud down the annulus of the well. After pumping about 15 or 20 barrels of mud he told Joe Mueller that they shouldn't be doing it, that it was wrong and he stopped pumping. Joe Mueller insisted that it be done and they started pumping mud down the annulus of the well once again and did so until ordered to stop by Joe Mueller. At that time members of the drilling crew noticed that the water well, the source of fresh water to maintain the drilling fluid when drilling, was abnormally flowing water to the surface. The water well blew out causing the following damages to Pearl Drilling: Loss of in-hole equipment valued at $40,000.00; damages in the amount of $35,000.00 to $40,000.00, due to loss of use of the blow out preventer and repairs to same and rental of another blow out preventer; loss of use of rig for a period of five days to a week due to excessive oil and sand in rig when well blew out having to be cleaned away.

The witness Isaac de los Santos, a driller of 33 years experience on drilling rigs with 24 of those years as a driller, testified that when the trouble started in the early morning hours of January 6, 1980, the mud weight was 9.8 pounds per gallon. That Hamilton and the mud logger came to the well site and advised him that gas showed in the mud; that he stopped drilling, pulled the bit up and kept pumping and pouring mud in the hold but the gas kept getting worse and he was told by Hamilton to close the blow out preventer rams. He went off duty at 7:00 a.m. on January 6, 1980, and returned at 11:00 p.m. on the night of January 6, 1980. Joe Mueller was in charge during the night and was giving the orders. When he got off duty at 7:00 a.m. on January 7, 1980, the well was still flowing gas.

Hamilton testified that Mueller arrived at the well site at 6:00 p.m. on January 6, 1980, at his request. He further testified that it was a dangerous and hazardous practice to pump 75 barrels of mud down the annulus of the well. Hamilton also

**344**

identified plaintiff's exhibit three as the operating agreement he had entered into with Archer on August 10, 1978, and that it was in effect during the drilling of Cuellar No. 2.

Hamilton contends that there is no evidence that he owed a duty to and breached a duty to Pearl Drilling with respect to the alleged negligent act of pumping drilling mud down the annulus of the well. He argues that the rights and liabilities of the parties arise from and are based upon the written drilling contract; that these rights and liabilities with respect to the drilling and any blowout of the well are specifically addressed and governed by the drilling contract. That the drilling contract does not impose any duty or obligation upon Hamilton concerning the alleged negligent act of pumping drilling mud down the annulus and imposes no obligation upon Hamilton for any damages incurred by Pearl Drilling as a result of such alleged negligent act.

■ We have examined the drilling contract and under its terms find that we must disagree with Hamilton. Under its terms, Hamilton, or his authorized representatives, were entitled at all times to have access to the well site for the purpose of inspecting and supervising the work of Pearl Drilling and Pearl Drilling was entitled to rely on any orders and directions issued by Hamilton or his representative. Hamilton was therefor under a general duty to use all reasonable means to control or prevent the blowout of the well. In *Montgomery Ward & Co. v. Scharrenbeck,* 146 Tex. 153, 204 S.W.2d 508, 510 (1947), the Supreme Court of Texas stated the rule as follows: ". . . [T]he sound rule appears to be that where there is a general duty even though it arises from the relation created by, or from the terms of a contract, and that duty is violated, either by negligent performance or negligent non-performance, the breach of the duty may constitute actionable negligence."

We hold that the trial court was correct when it impliedly found that Mueller was the agent of Hamilton, and that in the scope of his employment, he failed to exercise proper care in the performance of his duty and such negligence caused injury to Pearl Drilling. Accordingly, we sustain venue in Duval County pursuant to subdivision 9a as to Hamilton.

■ Archer urges in his supplemental plea of privilege and here that as a matter of law he is not liable as a partner or a joint venturer or vicariously liable for any alleged conduct of Hamilton. We agree. There is no evidence that Archer is a necessary party. We have examined the operating agreement introduced by Pearl Drilling in its attempt to show that Archer is a necessary party. We conclude that the agreement and the proof at the plea of privilege hearing in support thereof show no more than that Archer invested in the venture, but exercised no right to participate in the control or operation of the venture. There was testimony that Archer was present at the drill site on one occasion, however, we cannot construe such as proof of joint control. *See Ayco Development Corp. v. G.E.T. Service Co.,* 616 S.W.2d 184, 186 (Tex.1981); *Templeton v. Wolverton,* 142 Tex. 422, 179 S.W.2d 252, 256–57 (1944).

Accordingly, the judgment of the trial court overruling the plea of privilege of J.R. Hamilton is affirmed, and the judgment of the trial court overruling the plea of privilege of Archer is reversed and that as to Jack R. Archer, this suit be transferred to a District Court in Nueces County, Texas.[2]

---

2. We note that all parties agreed at the plea of privilege hearing that the evidence submitted at such hearing could and would be considered by the trial court as evidence in support of or against a plea in abatement filed by Hamilton and Archer. The trial court accepted such evidence but withheld its ruling on the plea in abatement pending the outcome of this appeal. We ask the same question now as we asked counsel during argument: What will happen to this appeal if the trial court rules that the plea in abatement should be upheld?