**PRAIRIE PRODUCING COMPANY, Appellant,**

v.

**M.R. MARTENS, et ux., Appellees.**

**No. 9252.**

Court of Appeals of Texas,
Texarkana.

Jan. 14, 1986.

Rehearing Denied Feb. 11, 1986.

GRANT, Justice.

This appeal involves the remaining half of a severed cause of action brought in Brazoria County. Prairie Producing appeals a judgment awarding the Martens $24,200.00 damages for breach of contract concerning a surface use contract in Prairie's exploratory drilling. Prairie contends that there is no evidence or insufficient evidence to support the jury verdict, and, that the Martens' recovery is barred by the doctrine of res judicata.

Milbert and Virginia Martens are the surface owners of a 101 acre tract in Brazoria County where Prairie holds a valid mineral lease. Prairie decided to drill on the Mar-

tens tract in 1981 and sent their agent, Douglas Ivey, to make arrangements with the Martens for entry on the property and to present a written proposal to the Martens. On April 16, 1981, Ivey met with the Martens and proposed that Prairie would build a road in a location agreeable to the Martens and include various other benefits for them. Mr. Martens testified that he orally agreed to the terms of Ivey's proposal. When Ivey returned the next day with a written proposal, the Martens refused to sign, stating that they wanted their lawyer to review the proposal. The Martens did not consult a lawyer until approximately April 22, when they realized that Prairie was going to take a different access route to the drillsite and thereby cross only a small area of the Martens' land.

This lawsuit arose when the Martens denied access to Prairie and its contractors. Because of this refusal, Prairie's drilling contractor accumulated "standby time" in the amount of $6,648.00 for which Prairie was charged. Prairie moved for summary judgment on the Martens' allegations of fraud and breach of contract. The motion was granted, affirmed on appeal, and is now final. *Martens v. Prairie Producing Co.*, 668 S.W.2d 889 (Tex.App.—Houston [14th Dist.] 1984, no writ).

During the pendency of the appeal, the Martens' breach of contract counterclaim was tried. No abatement or continuance was sought by Prairie despite the pending appeal. The jury's verdict is squarely opposed to the appellate court's holding in the prior case with respect to the issues of consideration and acceptance.

In considering Prairie's no evidence points, we consider only the evidence tending to support the finding, viewing it in the light most favorable to the finding giving effect to all reasonable inferences therefrom, and disregarding all contrary or conflicting evidence. *Glover v. Texas Gen. Indem. Co.*, 619 S.W.2d 400 (Tex.1981). Prairie's "insufficient evidence" point requires the court to consider and weigh all of the evidence. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951). After a careful review of the record, we find sufficient evidence to uphold the findings of the jury. The evidence presented at this trial was undoubtedly more fully developed than that presented at the prior summary judgment proceeding, and it sufficiently supports the jury findings, particularly those contrary to the earlier trial court judgment. Martens testified more than once that he accepted the offer made by Ivey:

A Well, after he got through talking about everything, we agreed on it. He went ahead and wrote out that handwritten thing and said "Is this suitable?"

And I said, "Yeah."

Q He said, "Is this suitable?"

A Suitable or agreeable. In other words, is this what we talked about and it sounds like what you're wanting to do?

And I said, "Yeah, that looks like the thing we talked about" or something to that effect.

. . . .

Q Can you tell me how you gave Doug Ivey as far as you're concerned to understand that everything that had been discussed that night was agreeable to you?

A Well, when he said, you know, I had this all wrote out and what we talked about and he said, "Is that agreeable to you" and I said, "Yeah," he says, "Well okay, I'll get it typed up and bring it back tomorrow evening."

Ivey testified that no agreement was reached. Where the evidence is conflicting, the question whether an alleged oral contract was assented to is a conflict for the jury. *Allen v. Bryant*, 470 S.W.2d 913 (Tex.Civ.App.—Amarillo 1971, writ ref'd n.r.e.). In the present case there was sufficient evidence to authorize the jury finding that an oral contract existed.

Martens further testified that he wanted to consult a lawyer to be sure the writing accurately reflected the oral agreement. The jury accepted this testimony by the finding to Special Issue 6.

Prairie contends that there was no consideration for the oral agreement, because Prairie had a right of access and use of the surface without entering into such an agreement. Both parties agree that under Texas law and pursuant to the rights of use under the lease agreement that Prairie Producing had a right to occupy and do such damage as was reasonably necessary to conduct its mineral operations.

According to the testimony, Ivey, on the day of the negotiations, filled in the blanks on a "Surface Agreement" form, and as this form appears in evidence, it would have released Prairie from "present and future surface damages associated with the construction of access roads to and the drilling and production operations on the DRILLSITE, . . ." However, Prairie points out that there was no evidence to show that the Martens ever agreed to that printed provision. Martens took the position that he was being compensated for the cutting of trees.[1]

The provision written by Ivey, which according to the testimony reflected the oral agreement,[2] reads as follows:

4) to pay to Martens the sum of *$10,500* which represents full payment & consideration for the clearing of and surface use of 7 acres of said Martens land during the construction & drilling operations thereon. Any additional timber cleared & acreage used during these initial operations shall be calculated at the rate of *1500* per acre.

There was no provision in the oral agreement that limited this clearing and surface use to that which was reasonably necessary. Thus, through these negotiations, Prairie gained the right to the clearing and use of the surface whether or not such clearing and use was reasonably necessary, and Prairie, after having paid for such right, could not have been held liable for using more than was reasonably necessary. The jury finding that Prairie did not use more than was reasonably necessary was an after-the-fact finding which did not affect the right of Prairie to bargain for this use or the right of Martens to bargain away his right to complain about acts which might have been compensable as

1. Martens testified as follows:
   A And then we got down to the damages of the seven acres. And he said he would pay me $1500.00 an acre.
   Q All right. Was there a free discussion between you and Ivey? I mean did you have some input as to the terms, or how was it being done?
   A Well, only input on terms I guess that I was involved in was the roads and the damages to the land.
   Q What was your input?
   A Well, more or less crying that I didn't want to lose my big oak trees more than anything else I guess.
   . . . .
   Q Do you recall the figure of $1500.00 per acre or the figure of $10,500.00 that's on Plaintiffs' 1?
   A Fifteen hundred dollars an acre.
   Q Did he tell you why he wanted to pay you this money?
   A He said for damages to the property.
   . . . .
   Q (By Mr. Bradford) You have been asked what—well, I don't know if you have been asked or not—what in your mind did you either give up or lose in return for what Prairie was going to do?
   A Oh, okay.
   Q What were you going to do? What were you going to lose or whatever?

   A Well, I was going to let him drill the well and I was going to lose some trees, lose the place where I wanted to build my house.
   Q Anything else?
   A I wound up damage to the property outside of losing the trees.
   Ivey testified:
   A I said, "I propose that the seven-acre drillsite, we pay you $1500.00 an acre for the removal of your trees."
   . . . .
   A Well, initially we had talked about the need to remove a certain number of trees. Not so much a number of trees, but an area where trees were growing, and I believe the figures were seven acres total for proposal purposes, five acres in the drillsite and two acres in the proposed road, and we had discussed this and other things; but at this point I made a proposal and the proposal was to pay to the Martens a sum of $1500.00 for the clearing of an acre of timber over seven acres which amounted to $10,500.00.

2. [Mr. Martens] Well, after he got through talking about everything, we agreed on it. He went ahead and wrote out that handwritten thing and said "Is this suitable?"
   And I said, "Yeah."

damages.[3] The cases of *Mobil Oil Corporation v. Brennan*, 385 F.2d 951 (5th Cir. 1967), and *Meyer v. Cox*, 252 S.W.2d 207 (Tex.Civ.App.-San Antonio 1952, writ ref'd), provide that parties to an oil and gas lease may by special provisions agree to vary the common law standard. By the same reasoning, the parties would not be prohibited from entering into an agreement to compensate the landowner on a per acre basis and not holding the lessee to the reasonably necessary standard.

In the case of *Union Producing Company v. Allen*, 297 S.W.2d 867 (Tex.Civ.App.-Beaumont 1957, no writ), the court found consideration existed for a similar agreement and stated as follows:

> The agreement contended for by appellees, however, would not be an extension or modification of the written agreement contained in the oil and gas lease, but is a new agreement on the part of Allen to forbear making any objections of any kind to the entry on his land in order that the appellant might proceed with its drilling operations without any controversy or delay. We believe that this was not an improper field for agreement between the parties. Allen conceivably might have had objections to the particular piece of land out of the leased tract on which the appellant desired to place its machinery and rig, pits, pipes and tanks. He might have been able to question with varying degrees of success the reasonableness and necessity of the extent to which appellant was using the surface of the land in its drilling operations and its good faith in wanting to fence part of the land at that particular place. It was of some benefit to the appellant to have the assurance from Allen that no objection of any kind would be made to such operations as the appellant saw fit, and in that sense the agreement to make no objection appears to us to be a promise sufficient to support the contract with the appellant, the new contract to forbear making any objections.

By agreeing to the use without limiting it to what was reasonably necessary, the Martens gave valuable consideration. The forebearance or surrender of a legal right is sufficient consideration for a contract. *Brison v. Continental Oil Co.*, 48 S.W.2d 442 (Tex.Civ.App.—Fort Worth 1932, writ ref'd).

Prairie did not contend that the contract was divisible, and no special consideration need be singled out or apportioned for each separate provision in a contract and a number of agreements covering more than one subject may be founded on one consideration. *Lee v. Lee*, 275 S.W.2d 574 (Tex.Civ. App.—Texarkana 1955, writ dism'd). Therefore the jury findings are sustained.

According to the doctrine of res judicata, a cause of action once finally determined without appeal between the parties on the merits by a competent tribunal cannot afterwards be relitigated by new proceedings either before the same or any other tribunal. *Texas Water Rights Commission v. Crow Iron Works*, 582 S.W.2d 768 (Tex. 1979).

At the time this suit was tried, the prior related summary judgment was on appeal. This appeal prevented its operation as res judicata. *Archer v. Bill Pearl Drilling Co.*, 655 S.W.2d 338 (Tex.App.—San Antonio 1983, writ dism'd); *Beyersdorff v. Spillar*, 224 S.W.2d 272 (Tex.Civ.App.—San Antonio 1949, no writ); *Dyches v. Ellis*, 199 S.W.2d 694 (Tex.Civ.App.-Austin 1947, no writ).

Prairie's proper recourse would have been a plea in abatement, which it failed to file. *Stein v. Lewisville Indep. School Dist.*, 496 S.W.2d 737 (Tex.Civ.App.—Fort Worth 1973, mand. overr.)

The judgment of the trial court is affirmed.

---

3. Tex.Rev.Civ.Stat.Ann. art. 2212b (Vernon Supp. 1985) prevents any oil or gas related agreement from being enforceable to the extent that it releases such damages caused by negligence and declares the same to be against public policy. However, the statute does not address intentional useage which might be deemed not reasonably necessary.