

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

NO. 2-09-247-CV

BRIAN DOTY OUTDOORS                                          APPELLANT

V.

TIM NOAH AND RIVAL                                            APPELLEES
MEDIA GROUP

------------

FROM THE 348TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

Following a bench trial, the trial court rendered judgment for Appellees Tim Noah and Rival Media Group and against Appellant Brian Doty Outdoors. In three issues on appeal, Doty argues that the evidence did not support the trial court's rulings that an implied-in-fact contract existed between the parties

------------

[1] *See* Tex. R. App. P. 47.4.

or that, alternatively, Noah was entitled to recover based on quantum meruit, and that the trial court erred by allowing Noah to testify as an expert witness on the reasonableness of his fees.  We will affirm.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Doty is a professional hunter.  Noah owns two video production companies—Rival Media Group and Focal Point Video Productions.  Doty and Noah met in August 2006 and began discussions about putting together a hunting television show.

Doty and Noah met at a restaurant in Fort Worth for their initial meeting. They discussed the concept of the proposed show, and despite the fact that the two did not reach an agreement on the terms of their working relationship at that initial meeting, Noah subsequently went on a bear hunting trip to Arkansas and to several calling contests with Doty and filmed the trips.  Noah did not get enough footage from these trips to produce a show, and he told Doty that he could not continue working in the manner that he was working because he could not pay his family's bills.  Noah suggested that Doty call him if Doty could line up a legitimate hunt, and a few months later, Doty called Noah about a bear hunt in Canada.  Noah agreed to go to Canada and film the hunt.

Before the two left for Canada, they met in the parking lot of the Tarrant County College to "hash out" the details of their agreement. They discussed Doty's role as host of the show and Noah's role as production specialist, which would include filming, producing, editing, script writing, and doing "everything necessary for the show to air." Regarding finances, they discussed a 60/40 split of profits from any sponsorship money, and Noah informed Doty that he "had to be paid," but they did not come to a firm agreement on finances at that meeting.

After a successful hunt in Canada, Noah went to Doty's house and again told Doty that he had to be paid. Noah explained to Doty that he needed at least $3,000 a month to pay his family's bills. Doty replied that "he would do what it takes to make that happen" and that he would pay Noah this amount from his own money or from sponsorship money. Noah testified that he understood from their discussion that he "would work for Mr. Doty and that [Doty] would pay him." Before leaving Doty's house that day, Noah informed Doty that he wanted them to execute a written contract, but that never happened.

Doty subsequently signed a contract with the Sportsman Channel, securing air time for *Brian Doty's Xtreme Outdoor Adventures*. From May 2007 through September 2007, Noah and Doty went on hunting trips in Canada,

3

Texas, Louisiana, Oklahoma, and South Dakota, where Noah filmed Doty's hunts. Doty paid for Noah's airfare and expenses for these trips. Noah continued asking Doty when he would be paid. At some point between May and September 2007, Doty wrote Noah a check for $2,500, but he never paid Noah any other money.

Noah completed eleven television shows for Doty and filmed footage for an additional four shows. Noah also filmed and produced two television commercials for sponsors that Doty had obtained and conducted photo shoots for photographs that were used in Doty's trade show banners, sponsorship kits, and marketing materials and on his website. Noah also created a print ad for the television show and DVD labels for DVDs included in the sponsorship kit.

After the South Dakota trip in September, Noah "felt like [he] was being played," and he sent Doty an email and letter stating that he was terminating his working relationship with Doty after the end of the first season, for which the footage had already been shot. He also stated in the letter that he expected payment of "the remainder of the sponsorship money owed me, for the completion of the work."

After Doty failed to make further payment to Noah, Noah sued Doty, bringing claims for breach of contract, theft of services, and quantum meruit. On the day of trial, Doty amended his general denial to add an affirmative

defense that Noah was not entitled to recover for quantum meruit because he was in a partnership with Doty. After a bench trial, the trial court sent a letter to both parties, stating its ruling that

> there was an implied contract for Doty to pay all expenses for the various hunts as well as $3000 per month to Noah in exchange for his video production services. Since there were 5 months of service (May–September), Doty owed Noah $15,000. Since Doty paid Noah $2500 . . . , Noah is entitled to recover $12,500 from Doty.
>
> . . . Even in the event that there was no contract in this case, I conclude that the evidence supports, and the parties agreed, that a reasonable value of the services provided by Noah to Doty was $3000 per month.
>
> Therefore, Noah is entitled to recover $12,500 from Doty. In addition, he recovers the stipulated attorney's fees of $14,000 as well as all court costs.

The court signed a written judgment accordingly. After the trial court denied Doty's motion for new trial, Doty perfected this appeal.

## III. IMPLIED CONTRACT

In his first issue, Doty argues that there was no evidence to support the trial court's ruling that he and Noah had entered into an implied-in-fact contract. Specifically, he argues that there was no evidence that the parties had a meeting of the minds as to the amount Doty would pay Noah for his production services and that the evidence established that he and Noah were partners with an agreement to split profits 60/40.

5

## A. Standard of Review

In a trial to the court in which no findings of fact or conclusions of law are filed, the trial court's judgment implies all findings of fact necessary to support it. *Pharo v. Chambers County*, 922 S.W.2d 945, 948 (Tex. 1996); *In re Estate of Rhea*, 257 S.W.3d 787, 790 (Tex. App.—Fort Worth 2008, no pet.). When, as in this case, a reporter's record is filed, however, these implied findings are not conclusive, and an appellant may challenge them by raising both legal and factual sufficiency of the evidence issues. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002); *Estate of Rhea*, 257 S.W.3d at 790. When such issues are raised, the applicable standard of review is the same as that to be applied in the review of jury findings or a trial court's findings of fact. *Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex. 1989). The judgment must be affirmed if it can be upheld on any legal theory that finds support in the evidence. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990); *In re Guardianship of Boatsman*, 266 S.W.3d 80, 85 (Tex. App.—Fort Worth 2008, no pet.).

We may sustain a legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more

6

than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998), *cert. denied*, 526 U.S. 1040 (1999); Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex. L. Rev. 361, 362–63 (1960). In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could and disregard evidence contrary to the finding unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005).

Anything more than a scintilla of evidence is legally sufficient to support the finding. *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996); *Leitch v. Hornsby*, 935 S.W.2d 114, 118 (Tex. 1996). When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983). More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about the existence of a vital fact. *Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co.*, 77 S.W.3d 253, 262 (Tex. 2002).

## B. Law on Implied Contracts

Whether an implied contract exists is determined from the actions of the parties. *Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding Co.*, 480 S.W.2d 607, 609 (Tex. 1972). An implied contract exists when the facts and circumstances show a mutual intention to contract, i.e., a meeting of the minds. *Id.* The determination of whether there is a meeting of the minds must be based upon objective standards of what the parties said and did, not on their alleged subjective states of mind. *Ervin v. Mann Frankfort Stein & Lipp CPAs, L.L.P.*, 234 S.W.3d 172, 183 (Tex. App.—San Antonio Aug. 8, 2007, no pet.). The parties must indicate, either expressly or through their conduct, that they mutually intend to contract. *See Williford Energy Co. v. Submergible Cable Servs., Inc.*, 895 S.W.2d 379, 384 (Tex. App.—Amarillo 1994, no writ). When the meeting-of-the-mind element is contested, as it is here, the determination of the existence of a contract becomes a question of fact. *Hallmark v. Hand*, 885 S.W.2d 471, 476–77 (Tex. App.—El Paso 1994, writ denied).

The absence of a fixed total price for services does not indicate a failure of the parties to reach a meeting of the minds with regard to the essential terms of the contract. *David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450 (Tex. 2008). " 'Where the parties have done everything else necessary to make a binding agreement for the sale of goods or services, their failure to specify the

8

price does not leave the contract so incomplete that it cannot be enforced.'" *Id.* (quoting *Bendalin v. Delgado*, 406 S.W.2d 897, 900 (Tex. 1966)). In those cases, we presume that a reasonable price was intended. *Id.*

### C. Legally Sufficient Evidence
### of Implied Contract Between the Parties

Here, Noah and Doty agreed that Noah would serve as production specialist for Doty's the television show, *Brian Doty's Xtreme Outdoor Adventures*. Although they never agreed to an exact amount Doty would pay Noah for his services, the evidence demonstrates that Doty agreed to pay Noah a minimum of $3,000 a month. Noah testified that he had explained to Doty that he needed $3,000 a month to pay his monthly bills and that Doty had indicated that he would use his own money or sponsorship money to "do what it takes to make that happen." Doty also testified that, at some point after he signed the contract for air time with the Sportsman Channel, Noah had told him that he needed $3,000 a month "to get by." This evidence is some evidence—certainly more than a scintilla—that the parties agreed that Doty would pay Noah at least $3,000 per month. *See Cont'l Coffee Prods. Co.*, 937 S.W.2d at 450; *Leitch*, 935 S.W.2d at 118.

Nevertheless, Doty contends that there is no evidence of a meeting of the minds. He alleges that, contrary to Noah's position, he and Noah had agreed

to split the profits from the sponsorship money 60/40 and that his and Noah's positions "are so divergent that there could not possibly have been a meeting of the minds." But when, as here, parties to an oral contract testify to conflicting terms, "the reviewing court must presume the terms were those asserted by the winner," in this case, Noah. *City of Keller*, 168 S.W.3d at 819. Although Doty testified differently regarding the nature of his and Noah's agreement, the trial court was free to evaluate the witnesses' credibility and assign weight to their testimony. *See id.*; *Prairie Producing Co. v. Martens*, 705 S.W.2d 257, 258 (Tex. App.—Texarkana 1986, writ ref'd n.r.e.).

Doty also points to evidence that Noah had sent him repeated emails requesting his share of the sponsorship money; Doty argues that these emails show that Noah also believed the two had agreed to a 60/40 split. While it is true that Noah's emails to Doty, admitted into evidence at trial, requested that Doty pay Noah "the remainder of the sponsorship money owed" him, the emails also referenced Doty's assurance that he would do what it takes to make sure that Noah received $3,000 per month. At trial, Noah also explained his references to sponsorship money; according to Noah, Doty had said that he had no money to pay Noah, and Noah knew that "[t]he only way that Mr. Doty was getting money was through sponsorship money." Thus, Noah requested compensation out of the only source of funds that he knew Doty had.

10

Finally, Doty argues that there was no evidence of an implied-in-fact contract per the terms alleged by Noah because the conduct of the parties shows that they were instead in a partnership together. But Doty testified at trial that Noah had not made any contributions to the alleged partnership, that a tax return was not filed for the partnership, that Doty had claimed all the business's losses on his personal taxes, and that Doty had not consulted with Noah regarding expenditures of the alleged partnership. Thus, the evidence does not establish conclusively that a partnership existed between the parties. *See Martinez*, 977 S.W.2d at 334; *see also Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 176 (Tex. 1997) (holding that to establish partnership, plaintiff must show community of interest in venture, agreement to share profits and losses, and mutual control or management).

Viewing the evidence favorable to the trial court's implied findings, and disregarding evidence to the contrary unless a reasonable factfinder could not, we hold that the evidence was legally sufficient to establish an implied contract, the terms of which included that Doty pay Noah a minimum of $3,000 per month. *See City of Keller*, 168 S.W.3d at 827. We overrule Doty's first issue.

IV.  CONCLUSION

Having overruled Doty's first issue, which is dispositive, we do not reach his remaining issues.[2]  *See* Tex. R. App. P. 47.1.  We affirm the trial court's judgment.

SUE WALKER
JUSTICE

PANEL: DAUPHINOT, WALKER, and MCCOY, JJ.

DELIVERED: May 13, 2010

---

[2] Having determined that legally sufficient evidence exists that the parties had an implied contract that Doty pay Noah $3,000 per month, we need not address Doty's second issue—regarding Noah's alternative quantum meruit theory of recovery—or Doty's third issue—regarding Noah's expert testimony about the reasonableness of his fees.  *See Haden*, 266 S.W.3d at 450 (noting, in breach of contract case, that courts presume reasonable price when parties to contract fail to specify price).