COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-09-247-CV

 

 

BRIAN DOTY OUTDOORS                                                     APPELLANT

 

                                                   V.

 

TIM NOAH AND RIVAL                                                         APPELLEES

MEDIA GROUP                                                                                    

                                              ------------

 

           FROM
THE 348TH DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

------------

I.  Introduction








Following
a bench trial, the trial court rendered judgment for Appellees Tim Noah and
Rival Media Group and against Appellant Brian Doty Outdoors. In three issues on
appeal, Doty argues that the evidence did not support the trial court=s
rulings that an implied-in-fact contract existed between the parties or that,
alternatively, Noah was entitled to recover based on quantum meruit, and that
the trial court erred by allowing Noah to testify as an expert witness on the
reasonableness of his fees.  We will
affirm.

II.  Factual and Procedural Background

Doty is
a professional hunter.  Noah owns two
video production companiesCRival
Media Group and Focal Point Video Productions. 
Doty and Noah met in August 2006 and began discussions about putting
together a hunting television show.   

Doty and
Noah met at a restaurant in Fort Worth for their initial meeting. They
discussed the concept of the proposed show, and despite the fact that the two
did not reach an agreement on the terms of their working relationship at that
initial meeting, Noah subsequently went on a bear hunting trip to Arkansas and
to several calling contests with Doty and filmed the trips.  Noah did not get enough footage from these
trips to produce a show, and he told Doty that he could not continue working in
the manner that he was working because he could not pay his family=s
bills.  Noah suggested that Doty call him
if Doty could line up a legitimate hunt, and a few months later, Doty called
Noah about a bear hunt in Canada.  Noah
agreed to go to Canada and film the hunt.








Before
the two left for Canada, they met in the parking lot of the Tarrant County
College to Ahash out@ the
details of their agreement.  They
discussed Doty=s role as host of the show and
Noah=s role
as production specialist, which would include filming, producing, editing,
script writing, and doing Aeverything
necessary for the show to air.@  Regarding finances, they discussed a 60/40
split of profits from any sponsorship money, and Noah informed Doty that he Ahad to
be paid,@ but
they did not come to a firm agreement on finances at that meeting. 

After a
successful hunt in Canada, Noah went to Doty=s house
and again told Doty that he had to be paid. 
Noah explained to Doty that he needed at least $3,000 a month to pay his
family=s
bills.  Doty replied that Ahe would
do what it takes to make that happen@ and
that he would pay Noah this amount from his own money or from sponsorship
money.  Noah testified that he understood
from their discussion that he Awould
work for Mr. Doty and that [Doty] would pay him.@  Before leaving Doty=s house
that day, Noah informed Doty that he wanted them to execute a written contract,
but that never happened.    








Doty
subsequently signed a contract with the Sportsman Channel, securing air time
for Brian Doty=s Xtreme Outdoor Adventures.  From May 2007 through September 2007, Noah
and Doty went on hunting trips in Canada, Texas, Louisiana, Oklahoma, and South
Dakota, where Noah filmed Doty=s
hunts.  Doty paid for Noah=s
airfare and expenses for these trips. 
Noah continued asking Doty when he would be paid.  At some point between May and September 2007,
Doty wrote Noah a check for $2,500, but he never paid Noah any other money. 

Noah
completed eleven television shows for Doty and filmed footage for an additional
four shows.  Noah also filmed and
produced two television commercials for sponsors that Doty had obtained and
conducted photo shoots for photographs that were used in Doty=s trade
show banners, sponsorship kits, and marketing materials and on his
website.  Noah also created a print ad
for the television show and DVD labels for DVDs included in the sponsorship
kit.          After
the South Dakota trip in September, Noah Afelt
like [he] was being played,@ and he
sent Doty an email and letter stating that he was terminating his working
relationship with Doty after the end of the first season, for which the footage
had already been shot.  He also stated in
the letter that he expected payment of Athe
remainder of the sponsorship money owed me, for the completion of the work.@  








After Doty failed to make further payment to
Noah, Noah sued Doty, bringing claims for breach of contract, theft of
services, and quantum meruit. On the day of trial, Doty amended his general
denial to add an affirmative defense that Noah was not entitled to recover for
quantum meruit because he was in a partnership with Doty.  After a bench trial, the trial court sent a
letter to both parties, stating its ruling that 

 

there was an implied contract for Doty to pay all expenses for the
various hunts as well as $3000 per month to Noah in exchange for his video
production services.  Since there were 5
months of service (MayBSeptember), Doty owed
Noah $15,000.  Since Doty paid Noah $2500
. . . , Noah is entitled to recover $12,500 from Doty. 

 

. . .  Even
in the event that there was no contract in this case, I conclude that the
evidence supports, and the parties agreed, that a reasonable value of the
services provided by Noah to Doty was $3000 per month.  

 

Therefore, Noah is entitled to recover $12,500
from Doty.  In addition, he recovers the
stipulated attorney=s fees of $14,000 as well
as all court costs. 

 

The court signed a written
judgment accordingly.  After the trial
court denied Doty=s motion for new trial, Doty
perfected this appeal. 

III.  Implied Contract

In his
first issue, Doty argues that there was no evidence to support the trial court=s ruling
that he and Noah had entered into an implied-in-fact contract. Specifically, he
argues that there was no evidence that the parties had a meeting of the minds
as to the amount Doty would pay Noah for his production services and that the
evidence established that he and Noah were partners with an agreement to split
profits 60/40. 








A. 
Standard of Review

In a
trial to the court in which no findings of fact or conclusions of law are
filed, the trial court=s judgment implies all findings
of fact necessary to support it.  Pharo
v. Chambers County, 922 S.W.2d 945, 948 (Tex. 1996); In re Estate of
Rhea, 257 S.W.3d 787, 790 (Tex. App.CFort
Worth 2008, no pet.).  When, as in this
case, a reporter=s record is filed, however,
these implied findings are not conclusive, and an appellant may challenge them
by raising both legal and factual sufficiency of the evidence issues.  BMC Software Belg., N.V. v. Marchand,
83 S.W.3d 789, 795 (Tex. 2002); Estate of Rhea, 257 S.W.3d at 790.  When such issues are raised, the applicable
standard of review is the same as that to be applied in the review of jury
findings or a trial court=s findings of fact.  Roberson v. Robinson, 768 S.W.2d 280, 281
(Tex. 1989). The judgment must be affirmed if it can be upheld on any legal
theory that finds support in the evidence. 
Worford v. Stamper, 801 S.W.2d 108, 109 (Tex. 1990); In re
Guardianship of Boatsman, 266 S.W.3d 80, 85 (Tex. App.CFort
Worth 2008, no pet.).








We may
sustain a legal sufficiency challenge only when (1) the record discloses a complete
absence of evidence of a vital fact; (2) the court is barred by rules of law or
of evidence from giving weight to the only evidence offered to prove a vital
fact; (3) the evidence offered to prove a vital fact is no more than a mere
scintilla; or (4) the evidence establishes conclusively the opposite of a vital
fact.  Uniroyal Goodrich Tire Co. v.
Martinez, 977 S.W.2d 328, 334 (Tex. 1998), cert. denied, 526 U.S.
1040 (1999); Robert W. Calvert, ANo
Evidence@ and AInsufficient
Evidence@ Points of Error, 38
Tex. L. Rev. 361, 362B63 (1960).  In determining whether there is legally
sufficient evidence to support the finding under review, we must consider
evidence favorable to the finding if a reasonable factfinder could and
disregard evidence contrary to the finding unless a reasonable factfinder could
not.  Cent. Ready Mix Concrete Co. v.
Islas, 228 S.W.3d 649, 651 (Tex. 2007); City of Keller v. Wilson,
168 S.W.3d 802, 807, 827 (Tex. 2005).

Anything
more than a scintilla of evidence is legally sufficient to support the
finding.  Cont=l Coffee
Prods. Co. v. Cazarez, 937 S.W.2d 444, 450 (Tex. 1996); Leitch v.
Hornsby, 935 S.W.2d 114, 118 (Tex. 1996). 
When the evidence offered to prove a vital fact is so weak as to do no
more than create a mere surmise or suspicion of its existence, the evidence is
no more than a scintilla and, in legal effect, is no evidence.  Kindred v. Con/Chem, Inc., 650 S.W.2d
61, 63 (Tex. 1983).  More than a
scintilla of evidence exists if the evidence furnishes some reasonable basis
for differing conclusions by reasonable minds about the existence of a vital
fact.  Rocor Int=l, Inc.
v. Nat=l Union Fire Ins. Co., 77
S.W.3d 253, 262 (Tex. 2002).








B.  Law on
Implied Contracts

Whether
an implied contract exists is determined from the actions of the parties.  Haws & Garrett Gen. Contractors, Inc.
v. Gorbett Bros. Welding Co., 480 S.W.2d 607, 609 (Tex. 1972).  An implied contract exists when the facts and
circumstances show a mutual intention to contract, i.e., a meeting of the
minds.  Id.  The determination of whether there is a
meeting of the minds must be based upon objective standards of what the parties
said and did, not on their alleged subjective states of mind.  Ervin v. Mann Frankfort Stein & Lipp
CPAs, L.L.P., 234 S.W.3d 172, 183 (Tex. App.CSan
Antonio Aug. 8, 2007, no pet.).  The
parties must indicate, either expressly or through their conduct, that they
mutually intend to contract.  See
Williford Energy Co. v. Submergible Cable Servs., Inc., 895 S.W.2d 379, 384
(Tex. App.CAmarillo 1994, no writ).  When the meeting-of-the-mind element is
contested, as it is here, the determination of the existence of a contract
becomes a question of fact.  Hallmark
v. Hand, 885 S.W.2d 471, 476B77 (Tex.
App.CEl Paso
1994, writ denied).








The absence of a fixed total price for services
does not indicate a failure of the parties to reach a meeting of the minds with
regard to the essential terms of the contract. 
David J. Sacks, P.C. v. Haden, 266 S.W.3d 447, 450 (Tex.
2008).  A>Where the parties have
done everything else necessary to make a binding agreement for the sale of
goods or services, their failure to specify the price does not leave the
contract so incomplete that it cannot be enforced.=@  Id. (quoting Bendalin v. Delgado,
406 S.W.2d 897, 900 (Tex. 1966)).  In
those cases, we presume that a reasonable price was intended.  Id. 


 

C.  Legally Sufficient Evidence 

of Implied Contract Between the Parties

 

Here,
Noah and Doty agreed that Noah would serve as production specialist for Doty=s the
television show, Brian Doty=s Xtreme
Outdoor Adventures.  Although
they never agreed to an exact amount Doty would pay Noah for his services, the
evidence demonstrates that Doty agreed to pay Noah a minimum of $3,000 a
month.  Noah testified that he had
explained to Doty that he needed $3,000 a month to pay his monthly bills and
that Doty had indicated that he would use his own money or sponsorship money to
Ado what
it takes to make that happen.@  Doty also testified that, at some point after
he signed the contract for air time with the Sportsman Channel, Noah had told
him that he needed $3,000 a month Ato get
by.@  This evidence is some evidenceCcertainly
more than a scintillaCthat the parties agreed that
Doty would pay Noah at least $3,000 per month. 
See Cont=l Coffee Prods. Co., 937
S.W.2d at 450; Leitch, 935 S.W.2d at 118. 








Nevertheless,
Doty contends that there is no evidence of a meeting of the minds.  He alleges that, contrary to Noah=s
position, he and Noah had agreed to split the profits from the sponsorship
money 60/40 and that his and Noah=s
positions Aare so divergent that there
could not possibly have been a meeting of the minds.@  But when, as here, parties to an oral
contract testify to conflicting terms, Athe
reviewing court must presume the terms were those asserted by the winner,@ in this
case, Noah.  City of Keller, 168
S.W.3d at 819. Although Doty testified differently regarding the nature of his
and Noah=s
agreement, the trial court was free to evaluate the witnesses=
credibility and assign weight to their testimony.  See id.; Prairie Producing Co. v.
Martens, 705 S.W.2d 257, 258 (Tex. App.CTexarkana
1986, writ ref=d n.r.e.).

        Doty
also points to evidence that Noah had sent him repeated emails requesting his
share of the sponsorship money; Doty argues that these emails show that Noah
also believed the two had agreed to a 60/40 split.  While it is true that Noah=s emails
to Doty, admitted into evidence at trial, requested that Doty pay Noah Athe
remainder of the sponsorship money owed@ him,
the emails also referenced Doty=s
assurance that he would do what it takes to make sure that Noah received $3,000
per month.  At trial, Noah also explained
his references to sponsorship money; according to Noah, Doty had said that he
had no money to pay Noah, and Noah knew that A[t]he
only way that Mr. Doty was getting money was through sponsorship money.@  Thus, Noah requested compensation out of the
only source of funds that he knew Doty had.








Finally,
Doty argues that there was no evidence of an implied-in-fact contract per the
terms alleged by Noah because the conduct of the parties shows that they were
instead in a partnership together.  But
Doty testified at trial that Noah had not made any contributions to the alleged
partnership, that a tax return was not filed for the partnership, that Doty had
claimed all the business=s losses on his personal taxes,
and that Doty had not consulted with Noah regarding expenditures of the alleged
partnership.  Thus, the evidence does not
establish conclusively that a partnership existed between the parties.  See Martinez, 977 S.W.2d at 334; see
also Schlumberger Tech. Corp. v. Swanson, 959 S.W.2d 171, 176 (Tex. 1997)
(holding that to establish partnership, plaintiff must show community of
interest in venture, agreement to share profits and losses, and mutual control
or management).   

Viewing
the evidence favorable to the trial court=s
implied findings, and disregarding evidence to the contrary unless a reasonable
factfinder could not, we hold that the evidence was legally sufficient to
establish an implied contract, the terms of which included that Doty pay Noah a
minimum of $3,000 per month. See City of Keller, 168 S.W.3d at 827.  We overrule Doty=s first
issue.

 

 








IV.  Conclusion

Having
overruled Doty=s first issue, which is
dispositive, we do not reach his remaining issues.[2]  See Tex. R. App. P. 47.1.  We affirm the trial court=s
judgment.

 

SUE WALKER

JUSTICE

 

PANEL: DAUPHINOT, WALKER, and MCCOY, JJ.

 

DELIVERED: May 13, 2010   











[1]See Tex. R. App. P. 47.4.





[2]Having determined that
legally sufficient evidence exists that the parties had an implied contract
that Doty pay Noah $3,000 per month, we need not address Doty=s second issueCregarding Noah=s alternative quantum
meruit theory of recoveryCor Doty=s third issueCregarding Noah=s expert testimony about
the reasonableness of his fees.  See
Haden, 266 S.W.3d at 450 (noting, in breach of contract case, that courts
presume reasonable price when parties to contract fail to specify price).