956:

**PACE v. EOFF.**
No. 1292—5771.

Commission of Appeals of Texas, Section **B.**
April 21, 1932.

Sayles & Sayles and John Sayles, all of Abilene, for plaintiff in error.

W. J. Cunningham, of Abilene, and J. M. Chandler, of Longview, for heirs of John Eoff.

Thomas & Shapard, of Anson, for defendant in error.

SHORT, P. J.

The facts in this case are few and uncontradicted. The sole legal question involved is whether a surviving widow of a deceased husband, whose estate is being administered by the probate court, the husband having died intestate, and whose estate is solvent, is entitled to have her allowance for a year's support charged to the estate of herself and husband, or whether the amount of this allowance shall be charged to her part of the community estate of herself and husband in the distribution of the property remaining in the hands of the administrator after all debts and expenses of administration have been paid. The probate court, where the estate was being administered, while allowing a portion claimed for a year's support, ordered that in the distribution it should be charged as a debt against that portion of the surviving widow's community property left in the hands of the administrator, when the estate should be ready for distribution. In other words, the judgment of the probate court decreed that the amount ordered paid the widow should be considered as an advancement to her out of her portion of the community estate of herself and husband, when said estate should be ready for distribution.

Upon appeal to the district court the order of the probate court was set aside and an order made that an allowance for the maintenance of the surviving widow for one year was fixed at the sum of $3,941.56, and the administrator was ordered to pay to the receiver of the widow's estate, not as an advancement, but that the same should be charged against the community estate of the husband and wife, together with the costs of the administration and the debts chargeable against such community estate and that one-half of the remainder should be delivered to the survivor, or her legal representatives or heirs. From this judgment of the district court the administrator, who is shown to have been in possession of all the property, including the separate estate of the deceased husband and the community estate of the deceased and surviving wife, and who had contended that the estate being solvent and a part of the wife's community estate being sufficient to maintain her for a year, and who had also contended that this community property of the wife became her separate estate by the death of her husband, appealed to the Court of Civil Appeals at Eastland, where that portion of the judgment of the district court was set aside, which made the community estate of the husband and wife responsible for the year's allowance, and entered a judgment allowing the amount of the allowance decreed by the district court, but directed that this amount should be charged as an advancement to the widow out of her portion of the community estate of herself and her husband remaining in the hands of the administrator when the estate became ready for distribution. The Supreme Court granted the application of the receiver of the surviving widow because of the importance of the question involved. 25 S.W.(2d) 264.

The legal proposition of the administrator is to the effect that the allowance for a year's support of the surviving widow should be charged against her interest in the community estate and that this interest in said estate is her separate property which it may be admitted, for purposes of this discussion, to be adequate to her maintenance for one year; while the legal proposition presented by the receiver of the surviving widow is to the effect that upon final distribution and partition of the community estate of the deceased and his surviving wife, said allowance, should not be charged against the interest of the surviving widow in the community estate left in the hands of the administrator for distribution after all debts shall have been paid, together with the costs of administration.

The proceeding in the probate court is one in rem and the record shows that the administrator inventoried, as a part of the estate of the deceased husband, all of the property belonging to the husband and his surviving wife

and took actual possession of this property, together with the separate estate of the deceased husband. The record also shows that he sold a part of the lands belonging to the community estate of the deceased husband and surviving wife and, of course, conveyed to the purchaser such title as belonged to both the deceased husband and the surviving wife. The record also shows that there was belonging to said community estate some money in the bank and that the whole of said community estate was inventoried at the valuation of $45,844.75, the separate estate of the deceased being valued at $32,000. There is nothing in the record to show the amount of the debts of the community estate nor the costs of the administration, but it may be assumed that there would have been left out of the community estate of the deceased husband and his surviving wife, after these debts and costs have been paid, a sum one-half of which would be equal to the amount of the allowance, approximating $4,000, and according to the contention of the administrator, the widow would not be entitled to any portion of the community estate in the final distribution thereof, should it appear that her one-half of the remainder in his hands did not exceed in value what she had already received by way of an allowance for a year's support.

On the contrary, it is the contention of the receiver of the surviving widow that while her portion of the community estate, left in the hands of the administrator of the estate of the deceased husband, is liable for its proportionate share to pay the debts of the community estate and the cost of administration, yet the whole of the community estate is not only liable for such debts and such costs, but is also liable for the payment of the sum allowed her for a year's support; the latter sum to have preference over all debts of the community estate, except funeral expenses and expenses of the last sickness of the intestate.

However, it is the further contention of the administrator that subject to the payment of the debts of the community estate, one-half of the community property belonging to the deceased husband and the surviving wife became, upon the death of the husband, the separate property of the surviving wife, and it being assumed that this so-called separate property is sufficient to maintain her for one year after the death of her husband, by virtue of the terms of the statute the surviving wife was not entitled to have any allowance made her for a year's support.

The validity of this contention depends upon whether, under the law, where a person dies intestate, leaving community property of more value than the amount of the debts against said property, and where the probate court has taken charge of the community es-

tate lawfully, and where the deceased husband left a surviving wife having no property, except her interest in the community estate, this interest in the community estate, pending its administration in the probate court, became the separate property of the wife within the meaning of the phrase as used in the Constitution and laws of the state. This becomes a material inquiry under the facts of this case, in view of article 3478, R. S. 1925, which provides that: "No such allowance shall be made for the widow when she has separate property adequate to her maintenance." If her part of the residue of the community estate of herself and husband, in the hands of the administrator after the payment of debts and the costs of administration, is sufficient in value to maintain her for the first year after her husband's death, and if this residue constitutes her "separate property" within the meaning of that phrase, then under this article of the statute she would not be entitled to any allowance, such as is mentioned in articles 3476-3484, R. S. 1925. Assuming that the widow was not entitled to such an allowance, by reason of the assumed fact that she has separate property adequate to her maintenance, then the sums of money which the record shows the administration paid to her would necessarily be in the nature of advancements chargeable against her portion of the community estate remaining in the hands of the administrator when such estate was ready to be distributed among those entitled to receive it.

Section 15 of article 16 of the Constitution provides that: "All property, both real and personal, of the wife, owned or claimed by her before marriage, and that acquired afterward by gift, devise or descent, shall be her separate property." The Supreme Court of this state, speaking through Judge Greenwood, while discussing a kindred question, in Arnold v. Leonard, 114 Tex. 539, 273 S. W. 799, 801, stated at some length the history of this section of the Constitution, showing that its language is the same in the present Constitution as it was in the Constitutions of 1845, 1861, and 1866, citing, in addition to the Constitutions above mentioned, Muench v. Oppenheimer, 86 Tex. 570, 26 S. W. 496; Cox v. Robison, 105 Tex. 430, 150 S. W. 1149, as well as Owen v. Tankersley, 12 Tex. 407; § 66 Speer's Law of Marital Rights of Texas; 30 C. J. 530, § 52c. Judge Greenwood then proceeds to say in that case the following:

"The plain and obvious import of the language of the Constitution is to prescribe a test by which to determine when an acquest by the wife becomes a portion of the wife's separate estate. The test during coverture relates to the method by which the property is acquired. If the method be by gift, devise, of descent to the wife, then the Constitution makes the property belong to the wife's separate estate. If the method of acquiring

during marriage be different, then the property falls without the class of separate estate of the wife, as fixed by the Constitution. We think the Supreme Court was doing no more than giving effect to the words of the Constitution when it said, through Chief Justice Willie: 'But of the property which a wife may acquire during marriage, none becomes her separate estate except such as is derived by gift, devise or descent.' Ezell v. Dodson, 60 Tex. 332.

"We have no doubt that the people in adopting the Constitution in 1845, as in 1876, understood that it was intended to put the matter of the classes of property constituting the wife's separate estate beyond legislative control. Thereby both the wife and the husband were given constitutional guaranty of the status of all property derived by means of or through the wife. Our duty is plain to give effect to the people's will. Cooley's Constitutional Limitations (7th Ed.) p. 89.

"It is a rule of construction of Constitutions that ordinarily, when the circumstances are specified under which any right is to be acquired, there is an implied prohibition against the legislative power to either add to or withdraw from the circumstances specified. Koy v. Schneider, 110 Tex. 378, 218 S. W. 479, 221 S. W. 880; Dickson v. Strickland, 114 Tex. 176, 265 S. W. 1012, 1015; Ex parte Vallandigham, 1 Wall. 252, 17 L. Ed. 589; Cooley's Constitutional Limitations, p. 99; 6 R. C. L. § 43. Hence, when the Constitution says that as to property, not owned or claimed by the wife at marriage, it becomes her separate property when acquired in one of three specified modes, the Legislature is prohibited from saying that property acquired after marriage in some other mode may also become the wife's separate property.

"The rule of implied exclusion is no more binding in construing statutes than in interpreting Constitutions. In Howard v. York, 20 Tex. 672, in an opinion of Judge Roberts, it is said that for the Legislature to preserve to the wife's separate property increase of land and slaves 'impliedly negatives the idea that the increase of any other property becomes separate property.' "

Judge Ryan of this section of the Commission, in Frame v. Frame, 36 S.W.(2d) 152, 73 A. L. R. 1512, in construing the above language of the Constitution, says in effect that the Constitution furnishes the sole measure of the wife's separate estate. Article 4613, R. S. 1925, provides that: "All property of the husband * * * owned or claimed by him before marriage, and that acquired afterwards by gift, devise, or descent * * * shall be his separate property." While article 4614 provides that: "All property of the wife * * * owned or claimed by her before marriage, and that acquired afterward

by gift, devise or descent, * * * shall be the separate property of the wife." So we conclude that the phrase "separate property," as used in article 3478, does not mean the surviving wife's interest in the community property of herself and deceased husband, so as to bar her from *the right* to an allowance for the first year's support out of the community estate of herself and husband, while that estate is in the jurisdiction of the probate court, being administered for the purposes of paying the debts of the estate, nor does it bar her from having this allowance paid in preference to all other debts or charges against the estate, except expenses of the funeral and last sickness of the deceased.

However, the administrator further contends that even though this interest of the surviving wife in the community estate of her husband could not be classed as her separate property, and that even though the widow be allowed this sum of money for the first year's support, yet the sum so paid her should be charged against *her portion* of the community estate of herself and husband, remaining in his hands when the estate should be ready for distribution, on the theory that this allowance, prescribed by the law, in a *solvent estate*, is chargeable to such interest upon final distribution. The administrator, and indeed the Court of Civil Appeals, in its opinion base this contention upon a construction of article 3494, R. S. 1925, wherein it is provided that: "Should the estate, upon final settlement, prove to be insolvent, the title of the widow and children to all the property and allowances set apart or paid to them, under the provisions of this and of the preceding chapter, shall be absolute, and shall not be taken for any of the debts of the estate except as hereinafter provided." Article 3493 is also cited in support of this contention. This article reads as follows: "If, upon a final settlement of such estate, it shall appear that the same is solvent, the exempted property, except the homestead, which has been set apart to the widow or children or both, *together with any allowance that has been received by them in lieu thereof* [italics ours], shall be subject to partition and distribution among the heirs and distributees of such estate in like manner as the other property of the estate."

The Court of Civil Appeals says that these two articles standing alone without any reference to their history would present a question of some doubt as *to the title* (italics ours) to an allowance made for a widow and minor children, and the adult children or other heirs or distributees of the estate. But, when the history of the legislation is construed, the Court of Civil Appeals was of the opinion that all doubt as to such construction thereof would disappear. That court then proceeds to discuss the history of this legislation, and after quoting article 1305 of Paschal's Annotated Digest, and noting the

fact that the legislative act of 1876, which is substantially the same as article 3493, wherein it is shown that while article 1305 expressly provided that a year's provisions should be exempted from a final distribution among the distributees of the estate and that this provision is not mentioned in the legislative act of 1876, concludes that the legislative act of 1876 directed that the year's provisions should not be exempted from such distribution. In other words, the Court of Civil Appeals concluded that the omitted provisions of article 1305 were annulled by the legislative act of 1876. Of course, we agree with the Court of Civil Appeals as to the rule of construction it has applied, but we do not agree with it as to the meaning of the omitted provision of article 1305 of Paschal's Annotated Digest. This provision of article 1305 is as follows: "Provided, that, if the estate of such decedent be not insolvent, nothing in this section contained, shall be so construed as to prohibit the distribution and partition of said estate among the heirs and distributees thereof, including the portion herein provided, to be set aside for the use of the widow and children: *and, further provided, that a year's provision shall be exempted from such distribution.*" (Italics ours.)

■ The law imposes upon the husband the duty of supporting his wife. To enable him the better to discharge this duty, the law gives to the husband the right to manage, control, and dispose, not only of all his separate, but also all of the community property belonging to himself and wife, except the homestead. When the husband dies intestate, leaving debts chargeable against the community estate of himself and wife, the law gives to the creditors of that estate the right to go into the probate court and have the property belonging to the community estate, which is liable for the debts, placed in the custody of an administrator with the view of having such property sold, and to pay the debts. The administrator of such estate becomes entitled to the possession and control of the property belonging thereto, and under the orders of the court can dispose of it, by selling the same to such purchasers of whom the court shall approve. The wife having been deprived, by the death of her husband, of the means of support which she was accustomed to receive during his lifetime, is entitled, in pursuance of the policy of the law, to protect her during the first year after the death of her husband, and to receive from the estate of her husband, in the course of administration, to an allowance for a year's support, and it is expressly provided by the law that in fixing the amount of the allowance, the facts existing during the first year after such death shall be regarded. This last-mentioned fact furnishes to our minds conclusive evidence that this allowance must be made with reference to the condition of the *whole property* during the first year after the

death of the husband, and with reference to the necessities of the wife, and, in case there are minor children, the children, as measured by their condition in life, and what they had been accustomed to have during the lifetime of the husband and father. The probate court, obeying this provision of the law, in fixing the allowance with regard to the facts in existence after the death of the husband, could not possibly do so with reference to that portion of the community estate which the wife might be entitled to receive in the final disposition of the estate, after the payment of debts and costs of administration, for the reason that the law provides that this allowance shall be made at the first regular term of the court after the original grant of letters of administration, or at a subsequent term within twelve months after such grant, and because, under the law, at the time this allowance is directed to be made, the court could have no information as to the amount of the debts or the costs of administration, and therefore could not have any idea whether the estate was solvent or insolvent or, if solvent, the value of the residue which the wife would be entitled to receive upon final distribution. Moreover, the very language of the law in stating the purposes of making this allowance clearly indicates that the Legislature intended that the money furnished the widow should be spent for perishable articles such as food, clothing, and other necessities of the widow and other like necessities.

Notwithstanding this omission in this particular article, which dealt with this particular subject, we find the legislative act of 1876, as well as the present act, now article 3485, after declaring what should be set apart for the use and benefit of the widow and minor children and unmarried daughters remaining with the family of the deceased, declares that this property so set apart should not include any exemption for one year's supply of provisions, using substantially the same language as the omitted language formerly used in article 1305, and indicating that the property set apart by article 3485 for the use and benefit of the widow and minor children and unmarried daughters was a different kind and character of property from the one year's supply of provisions. We find the provision for the one year's supply of provisions to be the only one mentioned, in so many words, of this kind of property, evidently indicating the intention of the Legislature that this one year's supply of provisions was included in the provision of chapter 16, title 54, (articles 3476–3484), and that the allowance to the widow and minor children mentioned in this chapter included the one year's supply of provisions mentioned in article 3485.

■ The property set apart to the widow and minor children and unmarried daughters in article 3485, where the estate afterwards proves to be solvent, while after such setting

apart is not assets in the hands of the administrator to be finally distributed by the probate court, but this property is nevertheless a part of the estate of the deceased intestate and descends and vests in his heirs, the same as the testate distributed by the administrator. As said by Chief Justice Wheeler in O'Docherty v. McGloin, 25 Tex. 73, in speaking of this property which had been so set apart: "Though it may be subject to final partition and distribution, it is not assets in the hands of the administrator, but the *use of it* [italics ours] as a homestead is reserved to the family during the period of administration." In other words, the title to the property mentioned in article 3485, where the estate proves to be a solvent one, remains with the heirs, but it is not assets in the hands of the administrator. The contrary situation is presented by the exemption of one year's supply of provisions. This exemption of one year's supply of provisions occupies the same legal position as does the homestead and other exempted property, except the year's supply for provisions is not set apart under article 3485 for the use and benefit of the widow and minor children and unmarried daughters, clearly indicating that it was the intention of the Legislature that this one year's supply of provisions was considered to have been embraced in the allowance for which chapter 16 provides.

■ There is another potent reason for the omission of the italicized words in article 1305, Paschal's Annotated Digest by the Legislature in the act of 1876, which may be illustrated by assuming in this case, that the surviving widow, after the allowance had been made to her by an order of the probate court for a year's support in the sum of $4,-000, had died, before the year had expired, or some other event had happened before the year had expired, which had materially reduced her necessities during this first year after the death of her husband, at a time when a large portion of the amount allowed her for her support the first year had not been expended, indicating that the amount of the allowance was in excess of her necessities. In such a situation, and when the estate shall have been ready for distribution among those entitled to receive it, the heirs of the husband might present the facts to the probate court, and ask that this judgment allowing her the $4,000 be so modified as to reduce the allowance in accordance with the facts afterwards developed, and the probate court then would have the authority to modify its judgment according to the facts proven. In such a situation the residue of the original allowance, in excess of the necessities of the widow for a year's support, would, by virtue of this latter order of the court, become assets of the estate in process of administration, then ready for distribution, and this residue would then be distributed, one-half to the heirs of

the husband, and one-half to the wife, or her heirs as the case might be. The Legislature in enacting the act of 1876 doubtless recognized that such a situation might occasionally exist, and while the widow would have the right to the full sum originally fixed so long as this original order remained unmodified for her exclusive use during the first year after her husband's death, yet when the order has been modified her actual allowance would be reduced to the extent indicated by the modified order, and this modified order would have the legal effect to place the difference between the amount fixed in the original order and the modified order back into the hands of the administrator to become assets of the estate, to be distributed according to the laws of descent and distribution, and in accordance with the provisions of chapter 24, title 54, R. S. 1925 (articles 3598-3633). This distribution, under these provisions, could not be made until after the expiration of twelve months from the original grant of letters of administration, and other provisions of this chapter clearly indicate that the property to be distributed means the property in existence at the time the order of distribution is entered. Evidently the law does not contemplate that the year's supply of provisions set apart to the widow and to the minor children, if there be any, would be in existence at the end of such year. In James v. Thompson, 14 Tex. 463; Green v. Crow, 17 Tex. 185; Lockhart v. White, 18 Tex. 102; and Hubbard v. Horne, 24 Tex. 272, the Supreme Court has discussed in an indirect way the contruction of article 1305 of Paschal's Annotated Digest.

■ While the Supreme Court of this state has never passed directly in a solvent estate, upon this question, yet a similar statute has been construed in Sammonds v. Higbie's Estate, 103 Minn. 448, 115 N. W. 265, which cites Kellogg v. Graves, 5 Ind. 509, and in Singleton v. McQuerry, 8 Ky. Law Rep. 782, and in Mitcham v. Moore, 73 Ala. 542, wherein in effect it is held in those cases that a statute declaring there shall be "allowed" to a widow, the personal property of her deceased husband, therein described, vests in the widow an unqualified *right* to the property on the husband's death and that the selection thereof, by her, is not essential, but it is only necessary that she designate the particular property she elects to claim. There is no authority justifying a probate court to direct an administrator of a solvent estate to pay the surviving widow any sum of money as *an advancement*, for the reason that the court could have no basis to determine the amount of such *advancement*. Upon the other hand, assuming that the widow had no separate property, within the meaning of the Constitution, as she did not have in this case, and assuming further that the estate was solvent, that is to say, was able to pay its debts, then the interest of the creditors passed out of the

case, and the wife becomes entitled to the allowance which the law prescribes, not out of *her portion* of the residue of the community property, after the payment of debts and the costs of administration, but out of the community estate of herself and husband then being administered by the probate court, and in the exclusive control, and possession of the court's agent, the administrator. In other words, there is no law authorizing the probate court *to advance* to a widow any money out of the community property in the custody of the court, and the only authority for the court to direct its agent, the administrator, to pay any money to the widow from the estate then being administered, is found in the statute making it the duty of the court to fix her allowance at the first or succeeding term within the year after the grant of letters.

■■ The *lawful* granting by the probate court of an administration of the estate of a deceased person has the legal effect to place in the exclusive possession and control of the duly qualified administrator of such estate all the property belonging thereto, except the unincumbered homestead occupied by the family. Cline v. Niblo, 117 Tex. 481, 8 S.W. (2d) 633, 66 A. L. R. 916; Yarboro v. Brewster, 38 Tex. 397. Under the provisions of chapter 17, title 54, articles 3485-3501, R. S. 1925, where the estate is solvent, upon a final settlement, "the exempted property, except the homestead, which has been set apart to the widow or children or both, together with any allowance that has been received by them *in lieu thereof*, shall be subject to partition and distribution among the heirs and distributees of such estate in like manner as the other property of the estate." Article 3493. This provision of the law excludes the idea that as long as the surviving widow elects to occupy the homestead, it shall not be distributed upon final settlement of the estate *by the probate court*. It also means that should the widow die, and there should be minor children in the custody of the probate court by virtue of guardianship proceedings, and by virtue of an order made setting apart the homestead to the use of the children, such homestead shall not be subject to partition among those having an interest therein by the probate court.

■ The probate court has exclusive jurisdiction over all the property, except the unincumbered homestead occupied by the family, of the deceased intestate, having lawfully acquired it, and the law requires that an order be made by the court in order to lawfully dispose either of the title to, or the use of this property, either to pay debts and the expenses of the administration, or to make an allowance for the first year's support of the widow and minor children, if there be any, during the first year after the death of the deceased husband and father. In other words, the probate court has the exclusive authority to determine the *right* of the widow and minor children, or either or both, to have the use of the homestead when designated as such, and also of other exempted property set apart to them, but it has no authority to disturb the *title* fixed by the law of descent and distribution to the homestead so designated as such, or to such other exempted property as may be in existence when the widow or the minor children shall cease to have the *right* to use such property. It is the *right to use* the homestead and other exempted property of the widow and children, or either or both, which the law means. It does not have any reference to the *interest* as contradistinguished from their *right to use such property*.

■■■ The title to the property mentioned in chapter 17, title 54, subject to *the use and benefit* of the minor children, and unmarried daughters remaining with the family of the deceased, is not affected by the orders of the probate court made prior to the final distribution of the property over which the probate court has jurisdiction. *Its use and its benefits are only affected by such orders.* Should the proper and reasonable use and benefit of the property of a perishable nature, be of that character as would eliminate its existence, or as would render it of no value, as, for instance, should the animals die, or the household and kitchen furniture be destroyed by fire, or should its usefulness be otherwise destroyed, there would be left of such kind of property nothing to distribute, and consequently there would be nothing for the distributees to receive when the *right to use the same* by the widow and minor children therein should have ceased. Under the very terms of article 3485, which is the first article under this chapter, the property exempted from execution is required to be set apart for the *use and benefit* of the widow and minor children and unmarried daughters remaining with the family of the deceased, indicating that the title to this property is not disturbed, but only its use and benefit is included within the meaning of the law. It is also significant that by the terms of article 3485, the exemption of one year's supply of provisions is expressly excluded from the property set apart for this use and benefit, evidently upon the idea that the one year's supply of provisions could not reasonably be included within the meaning of the phrase "use and benefit." When we construe the phrase "allowance to the widow and minor children" which is the subject of chapter 16, title 54, in the light of the provisions of the law as set forth in chapter 17, of said title, the logical conclusion to be reached is that this allowance is not included within the phrase "use and benefit" as set forth in article 3485, chapter 17, title 54 of the law. It so happens in this

case there were no minor children, and there was only a surviving widow.

If we should suppose a case where there were only minor children and no widow, with the facts the same as in this case, and it should be contended that the probate court was without authority to set apart an allowance to the minor children for their support the first year, upon a proper application to such court by the proper guardian, except as an advancement to such children out of the residue of the property remaining in the hands of the administrator after the debts and expenses of administration have been paid, we would have a similar situation as we have in this case, as far as the law is concerned. The effect of the opinion of the Court of Civil Appeals is to ignore the phrase "all other debts or charges against the estate, except the expenses of the funeral and last sickness of the deceased," as used in article 3483, which provides that "the allowance made for the support of the widow and minor children of deceased shall be paid in preference to all *other debts* [italics ours] or charges against the estate, except expenses of the funeral and last sickness of deceased." The word "debts," as used in that article, evidently means the same as "charges against the estate." Giving the word "debts" this meaning, there can be no escape from the conclusion that the word "allowance," as used in said article, stands upon the same footing as other debts of the estate and the expenses of administration. Giving it this meaning, the amount allowed the widow in this case is a preference debt against the estate, except the expenses of the funeral and last sickness of the deceased. Discussing this subject, wherein the estate was insolvent, Associate Justice Denman in Woolley v. Sullivan & Co., 92 Tex. 28, 45 S. W. 377, 381, 46 S. W. 629, said: "These allowances are creatures of the statute, based upon the wise policy of securing to the widow and children temporary support and reasonable means with which to begin anew the contest for subsistence, and are wholly independent of the will of the testator." In that case, the intestate had made a will wherein he left all of his property to his wife, but the Supreme Court held that the minor children were entitled to these allowances and that they are wholly independent of the will of the testator. Zwernemann v. Von Rosenberg, 76 Tex. 522, 13 S. W. 485; Hall v. Fields, 81 Tex. 553, 17 S. W. 82; Runnels v. Runnels, 27 Tex. 516.

The word "debt" is what one owes to another, and giving the word this meaning, as used in article 3483, the allowance for the support of the widow and minor children is a debt against the estate of the deceased, standing upon an equal footing with all other charges against it, except expenses of the funeral and last sickness of the deceased. The verb "advance" means to furnish by way of advancement, and the word "advancement" means money advanced to be deducted later when the estate should be ready for final distribution. The word "allowance," as used in chapter 16, title 54, has the same meaning as the word "grant" and is anonymous with the word "allotment," which means an assignment. In other words, that which is allowed by the probate court for the support of the widow and minor children of the deceased is an absolute grant of so much money, for the specified purpose, to the widow and minor children, or an absolute assignment thereof, and does not mean *an advancement.* In this case, under the facts, which are undisputed, no question of the right of the widow to this allowance has been raised on account of any act of estoppel on her part, nor of any act of negligence or failure to present her claims in due time, nor does the record present any question as to her legal right to an allowance to be taken out of the separate estate of her husband, and we do not discuss any of these questions and do not express any opinion as to the right of the widow to this allowance in any case which involves any of these questions.

The judgment rendered by the district court in this case was the correct one, and to the extent that the Court of Civil Appeals reversed that judgment, the opinion of that court is incorrect. Under the facts of this case the receiver of this widow is entitled to the allowance made by the probate court of Jones county for the year's support of the widow, the amount thereof to be charged like any other debt chargeable against the community estate of the deceased husband and surviving wife, then in the custody of the probate court, and the residue of such community property should be distributed among those entitled to receive it according to the laws of descent and distribution, after all the debts have been paid, including this particular debt of approximately $4,000. We recommend that the judgment of the Court of Civil Appeals be reversed to the extent indicated, and that of the district court affirmed.

CURETON, C. J.

The judgment of the Court of Civil Appeals is reversed, and that of the district court is affirmed, to the extent and as recommended by the Commission of Appeals.