COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
 2-07-283-CV

 

 

ESTATE OF WANDA MEACHAM RHEA, 

DECEASED                                                                                         

                                                                                                        

 

                                              ------------

 

                  FROM
THE COUNTY COURT OF YOUNG COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

Appellants Charlotte Bonner
Barrett and Trenton Bonner, independent co-executors of the estate of Wanda
Meacham Rhea, deceased, appeal from a trial court order awarding Appellee
Charles Rhea a family allowance of $20,000; $5,000 in lieu of exempt property;
and the use of Wanda=s wedding
ring during his lifetime.  We modify the
trial court=s order and
affirm the order as modified.

                                            Background








Charles, who is eighty-seven
years old, and Wanda married late in life and had been married for just under
nine years when Wanda died in June 2005 at the age of seventy-nine.  Wanda left a will bequeathing $10,000 cash to
each of her grandchildren and step-grandchildren, all of her jewelry and
personal effects to Charlotte, and the remainder of her estate to Charlotte and
Trenton. 








In October 2005, Charlotte
and Trenton notified Charles of their intent to remove Wanda=s personal property from the marital home.  Charles labeled some of the possessions in
the home to mark his own separate property, then left the house from November
11 through November 14.  Charlotte and
Trenton spent those four days moving possessions out of the home; they
estimated the value of the furniture and other possessions removed from the
home at $50,000.  Charles testified that
they took towels, sheets, pillow cases, blankets, dishes, cooking utensils,
pots and pans, and even toilet paper, half boxes of Kleenex, used bars of soap,
and all but one or two books.  They left
him one chair, a television, a couple of table lamps, one set of glasses, one
set of china, and some eating utensils. 
Charles testified that he was required to purchase a refrigerator, a
bed, a table and chairs, a washer and dryer, a microwave oven, a vacuum
cleaner, glasses, dishes, and pans Ato maintain . . . some semblance of the same standard
of living@ to which he
and Wanda  had grown accustomed during
their marriage.  He said he spent $3,700 Ato get back [to] where [he] could just exist there.@ 

In December 2006, shortly
after Charlotte and Trenton filed an inventory, appraisement, and list of
claims, Charles filed (1) an application for a family allowance of $30,000 and
(2) an application to set aside exempt propertyCincluding many of the items removed by Charlotte and TrentonCor, alternatively, for an allowance of $5,000 in lieu of the removed
personal property.  The trial court
awarded Charles a $20,000 family allowance; $5,000 in lieu of exempt property;
and use and possession of Wanda=s wedding ring during his lifetime Aas part of the exempt property.@  Charlotte and Trenton filed
this appeal.

                                       Standard of Review

In a trial to the court where
no findings of fact or conclusions of law are filed, the trial court=s judgment implies all findings of fact necessary to support it.  Pharo v. Chambers County, 922 S.W.2d
945, 948 (Tex. 1996).  Where a reporter=s record is filed, however, these implied findings are not conclusive,
and an appellant may challenge them by raising both legal and factual
sufficiency of the evidence issues.








An argument that the evidence
establishes conclusively the opposite of a fact essential to the trial court=s judgment is a challenge to the legal sufficiency of the
evidence.  Uniroyal Goodrich Tire Co.
v. Martinez, 977 S.W.2d 328, 334 (Tex. 1998), cert. denied, 526 U.S.
1040 (1999).  When a party without the
burden of proof at trial challenges the legal sufficiency of the evidence, we
consider all of the evidence in the light most favorable to the prevailing
party, indulging every reasonable inference in that party=s favor. Assoc. Indem. Corp. v. CAT Contracting, Inc., 964
S.W.2d 276, 285B86 (Tex.
1998). If there is any evidence of probative force to support the finding,
i.e., more than a mere scintilla, we will overrule the issue.  Formosa Plastics Corp. USA v. Presidio Eng=rs & Contractors, Inc., 960 S.W.2d
41, 48 (Tex. 1998)

                                         Family Allowance

In their first issue,
Charlotte and Trenton argue that the trial court erred by granting Charles a
$20,000 family allowance because Charles answered interrogatories showing that
he had monthly income of $2,706 and monthly expenses of $1,570, thereby
conclusively proving that he owned separate property adequate to provide for
his maintenance.  








Before a trial court approves
an estate=s  inventory, appraisement, and list of claims,
a surviving spouse may apply to the court to have the court fix a family
allowance by filing an application and a verified affidavit describing the
amount necessary for the maintenance of the surviving spouse for one year after
the date of the death of the decedent and describing the spouse=s separate property.  Tex. Prob. Code Ann. ' 286(b) (Vernon 2003).  The trial court must fix a family
allowance for the support of the surviving spouse in an amount sufficient for
the spouse=s
maintenance for one year from the time of the testator=s death with regard to the facts or circumstances then existing and
those anticipated to exist during the first year after such death.  Id. '' 286(b), 287 (Vernon 2003). 
But when the surviving spouse has separate property adequate to the
survivor=s maintenance, the trial court may not award an allowance.  Id. ' 288 (Vernon 2003).  The
applicant bears the burden of proof by a preponderance of the evidence at any
hearing on the application.  Id. ' 286.  When determining
whether a surviving spouse is entitled to an allowance and, if so, in what
amount, the trial court must consider the whole condition of the estate during
the first year after the spouse=s death, the necessities of the surviving spouse, and the
circumstances to which he or she has been accustomed.  Churchhill v. Churchhill, 780 S.W.2d
913, 916 (Tex. App.CFort Worth
1989, no writ) (citing Pace v. Eoff, 48 S.W.2d 956, 960 (Tex. Comm=n App. 1932, judgment adopted)).








The inventory, appraisement,
and list of claims filed by Charlotte and Trenton listed assets in Wanda=s estate with a total value of $847,601 and no liabilities.  In answers to interrogatories served by
Charlotte and Trenton, Charles itemized his income and expenses, and his income
of $2,706 exceeded his expenses of $1,570 by $1,136 per month.  But it is undisputed that Charlotte and
Trenton removed $50,000 worth of Wanda=s possessions from the marital home, including necessities such as the
beds, bedding, the refrigerator, dishes, cooking utensils, and most of the
furnitureCall of which
figure into the calculus of the circumstances to which Charles was accustomed during
Wanda=s life.  At the time of trial,
Charles had spent $3,700 on necessities to Aget back to where [he] could just exist@ in the marital home.  Moreover,
he testified that before her death, Wanda contributed $2,000 per month to their
joint checking account.  To the extent
the $50,000 of property removed from the marital home reflects the
circumstances to which Charles was accustomed beyond mere necessities, his
$1,136 per monthC$13,632 per
yearCsurplus income was inadequate to return him to those circumstances in
the year following Wanda=s
death.  See Churchill, 780 S.W.2d
at 916 (holding evidence legally and factually sufficient to support allowance
of $30,000 when widow had separate annual income of $34,161 per year but was
accustomed to spending $18,000B24,000 per year on golf tournaments).













Charlotte and Trenton rely on
Noble v. Noble, 636 S.W.2d 551, 552 (Tex. Civ. App.CSan Antonio 1982, no writ) and McCanless v. Devenport, 40
S.W.2d 903, 906 (Tex. Civ. App.CDallas 1931, no writ) to support their argument that Charles=s income is conclusively adequate to provide for his maintenance.  Both cases are distinguishable.  In Noble, the trial court found that
the decedent=s widow
required $11,428 for maintenance in the year following her husband=s death and had income from Social Security, a pension, and interest
on savings of $6,840 per year, and the court awarded her an allowance of
$4,588.  636 S.W.2d at 552.  The court of appeals reversed the award,
holding that the widow was not entitled to an allowance becauseCin addition to her incomeCshe owned extensive separate property worth at least $40,000,
including $35,000 in a savings account, $5,000 in treasury bills, and
twenty-nine acres of land.  Id.  By contrast, in this case, there is no
evidence that Charles owned any separate property apart from the few
furnishings Charlotte left in the marital residence, some tool boxes, and the
assetsCSocial Security, two pensions, and an annuityCthat generated his monthly income. 
In McCanless, the trial court awarded a decedent=s widow an allowance of $250. 
40 S.W.2d at 906.  The court of
appeals reversed the award because the widow testified that she had collected a
$989 life insurance policy upon the decedent=s death, received $8.00 per month in income from rental property, and
had not had to borrow money in the year following her husband=s death.  Id.  Thus, the widow=s testimony showed that she possessed funds far in excess of what the
trial court deemed necessary for her maintenance.  See id.  But in the case before us, the trial court
found that Charles required $20,000 for his maintenance, far more than his
income after deducting expenses for necessities.  Moreover, McCanless preceded Pace
and does not discuss the rule articulated in the latter case that the trial
court must consider not only the survivor=s necessities but the conditions of life to which the survivor was
accustomed before the decedent=s death.  See id.; Pace,
48 S.W.2d at 960.

Considering the evidence in
the light most favorable to the trial court=s allowance order, we hold that Charles=s monthly surplus income was notCas Charlotte and Trenton contendCconclusive proof of means adequate to provide for his maintenance in
the year following Wanda=s
death.  Therefore, we overrule Charlotte=s and Trenton=s first
issue.

            Allowance in Lieu of Exempt Property and the Wedding
Ring

In their second issue,
Charlotte and Trenton argue that the trial court erred by awarding Charles both
a $5,000 allowance in lieu of exempt personal property and use and possession
of Wanda=s wedding ring.  They contend
that a court may award a cash allowance in lieu of exempt property or
set aside the property for the surviving spouse, but it may not do both. 








Before the approval of the
inventory, appraisement, and list of claims, a surviving spouse may apply to
the court to have exempt property set aside. 
Tex. Prob. Code Ann. ' 271(b) (Vernon Supp. 2007).  The trial court must award a monetary
allowance for exempt property not among the decedent=s effects:

In
case there should not be among the effects of the deceased all or any of the
specific articles exempted from execution . . . , the court shall make a
reasonable allowance in lieu thereof. . . . The allowance in lieu of a
homestead shall in no case exceed $15,000 and the allowance for other exempted
property shall in no case exceed $5,000 . . . . 

 

Id. ' 273 (Vernon 2003).

Charlotte and Trenton argue
that setting aside exempt property and a cash allowance in lieu thereof are
mutually exclusive, alternative remedies; that is, they argue that if any
exempt property is on hand, the trial court may not award an allowance
in lieu of any exempt property that is not on hand.  This interpretation is contrary to the plain
meaning of section 273.  Under that
section, if any of the exempt property is not among the decedent=s effects, the trial court must Amake a reasonable allowance in lieu thereof.@  Id.  In other words, the trial court must make an
allowance for those exempt items that it cannot set aside because they are not
on hand.  If some exempt items are on
hand, it must set those aside for the surviving spouse and award an allowance
in lieu of those exempt items that are not on hand.













Charlotte and Trenton rely on
Barnett v. Barnett for their argument that a trial court may not set
aside exempt property and award an allowance in lieu of exempt property
that cannot be set aside.  985 S.W.2d
520, 532 (Tex. App.CHouston [1st
Dist.] 1998), rev=d on other grounds, 67 S.W.3d 107 (Tex.
2001).  The Barnett court stated
broadly that A[t]he
allowance is payable only if there is no homestead or other exempt property
among the effects of the deceased.@  Id. (citing Miller
v. Miller, 230 S.W.2d 237, 241 (Tex. Civ. App.CBeaumont 1950), rev'd on other grounds, 149 Tex. 543, 235
S.W.2d 624 (1951)).  Barnett and Miller
both involved homesteads and allowances in lieu of homesteads, not personal
property.  Id.; Miller, 230
S.W.2d at 241.  The Barnett court
held that a surviving spouse was not entitled to an allowance in lieu of the
homestead because there was a homestead in the decedent=s estate.  985 S.W.2d at
532.  Likewise, in Miller, there
was a homestead in the decedent=s estate, and he and his widow were living there before he died; thus,
his widow was not entitled to an allowance in lieu of the homestead.  230 S.W.2d at 241.  Thus, Barnett and Miller stand
for the proposition that under section 273, a surviving spouse is not entitled
to an allowance in lieu of a homestead if there is a homestead in the
estate.  Neither case speaks to the kind
of property involved in this caseCexempt personal propertyCand neither stands for the proposition that the presence of any
exempt personal property in an estate precludes an allowance for exempt
personal property that is not on hand. 
To the extent that the broad statement in Barnett suggests
otherwise, it is dictum and contrary to the express language of section 273,
and we decline to apply it to the facts of this case.

Because section 273
authorized the trial court to set aside the exempt personal property that was
on handCthe ringCand award Charles an allowance in lieu of the exempt personal property
that was not on hand, we hold that the trial court did not err by so
doing.  We overrule Charlotte and Trenton=s second issue.

                            Life Estate in Wanda=s Wedding Ring

In their third issue,
Charlotte and Trenton argue that the trial court erred by granting Charles a
life estate in Wanda=s wedding
ring.  The trial court ordered that ACharles Rhea shall have use and possession of the wedding ring worn by
the Decedent during his lifetime as part of the exempt property.  The Court makes no determination of ownership
or of the character of the ownership of the ring.@  Charlotte and Trenton contend
that the probate code authorizes a survivor=s use and possession of exempt personal property only until final
settlement of the estate.

Probate code section 278
provides as follows:

If,
upon a final settlement of the estate, it shall appear that the same is
solvent, the exempted property, except the homestead or any allowance in lieu
thereof, shall be subject to partition and distribution among the heirs and
distributees of such estate in like manner as the other property of the estate.








Tex. Prob. Code Ann. ' 278 (Vernon
2003).  Thus, a surviving spouse can
retain possession of tangible exempt property under the Ause and benefit@ provision
of section 271, but when the administration terminates, the decedent=s interest in these items must pass to the decedent=s heirs or devisees.  Id.;
Bolton v. Bolton, 977 S.W.2d 157, 159 (Tex. App.CTyler 1998, no pet.) (holding that trial court erred by granting
surviving spouse fee simple title to estate=s exempt property).

The trial court=s order is captioned in part AOrder . . . Setting Aside Exempt Property . . . for Use and Benefit of
Surviving Spouse.@  The only property set aside for Charles=s use and benefit is the ring. 
Thus, the trial court clearly set aside the ring under probate code
section 271, but section 278 precludes the grant of a life estate in exempt
property set aside under section 271.  See
Tex. Prob. Code Ann. '' 271, 278.  Thus, the trial
court erred by granting Charles a life estate in the ring under section 271.








Charles argues that the ring
is presumptively community property because it was acquired during the marriage
and that he is therefore entitled to a life estate in the ring.  In fact, Charles testified that he bought the
ring before the wedding and gave it to Wanda on their wedding day.  He further testified that they purchased a
diamond for the ring several months later, with each of them contributing half
of the diamond=s cost.  But the trial court specifically reserved the
question of the ring=s ownership;
therefore, the issue of whether Charles is entitled to a life estate in the
ring because it is community property is not ripe for our review.  

We sustain Charlotte and
Trenton=s third issue.

                                             Conclusion

Having overruled Charlotte
and Trenton=s first and
second issues and sustained their third issue, we strike the words Aduring his lifetime@ from the part of the trial court=s order granting Charles the use and possession of Wanda=s wedding ring, and we affirm the order as modified.

 

 

ANNE GARDNER

JUSTICE

 

PANEL A:   DAUPHINOT, GARDNER, and MCCOY, JJ.

 

DELIVERED:
June 5, 2008