

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-07-283-CV

ESTATE OF WANDA MEACHAM RHEA,
DECEASED

------------

## FROM THE COUNTY COURT OF YOUNG COUNTY

------------

## OPINION

------------

Appellants Charlotte Bonner Barrett and Trenton Bonner, independent co-executors of the estate of Wanda Meacham Rhea, deceased, appeal from a trial court order awarding Appellee Charles Rhea a family allowance of $20,000; $5,000 in lieu of exempt property; and the use of Wanda's wedding ring during his lifetime. We modify the trial court's order and affirm the order as modified.

**Background**

Charles, who is eighty-seven years old, and Wanda married late in life and had been married for just under nine years when Wanda died in June 2005 at the age of seventy-nine. Wanda left a will bequeathing $10,000 cash to each of her grandchildren and step-grandchildren, all of her jewelry and personal effects to Charlotte, and the remainder of her estate to Charlotte and Trenton.

In October 2005, Charlotte and Trenton notified Charles of their intent to remove Wanda's personal property from the marital home. Charles labeled some of the possessions in the home to mark his own separate property, then left the house from November 11 through November 14. Charlotte and Trenton spent those four days moving possessions out of the home; they estimated the value of the furniture and other possessions removed from the home at $50,000. Charles testified that they took towels, sheets, pillow cases, blankets, dishes, cooking utensils, pots and pans, and even toilet paper, half boxes of Kleenex, used bars of soap, and all but one or two books. They left him one chair, a television, a couple of table lamps, one set of glasses, one set of china, and some eating utensils. Charles testified that he was required to purchase a refrigerator, a bed, a table and chairs, a washer and dryer, a microwave oven, a vacuum cleaner, glasses, dishes, and pans "to maintain . . . some semblance of the same standard of living" to which he and Wanda

had grown accustomed during their marriage. He said he spent $3,700 "to get back [to] where [he] could just exist there."

In December 2006, shortly after Charlotte and Trenton filed an inventory, appraisement, and list of claims, Charles filed (1) an application for a family allowance of $30,000 and (2) an application to set aside exempt property—including many of the items removed by Charlotte and Trenton—or, alternatively, for an allowance of $5,000 in lieu of the removed personal property. The trial court awarded Charles a $20,000 family allowance; $5,000 in lieu of exempt property; and use and possession of Wanda's wedding ring during his lifetime "as part of the exempt property." Charlotte and Trenton filed this appeal.

## Standard of Review

In a trial to the court where no findings of fact or conclusions of law are filed, the trial court's judgment implies all findings of fact necessary to support it. *Pharo v. Chambers County*, 922 S.W.2d 945, 948 (Tex. 1996). Where a reporter's record is filed, however, these implied findings are not conclusive, and an appellant may challenge them by raising both legal and factual sufficiency of the evidence issues.

An argument that the evidence establishes conclusively the opposite of a fact essential to the trial court's judgment is a challenge to the legal

3

sufficiency of the evidence. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998), *cert. denied*, 526 U.S. 1040 (1999). When a party without the burden of proof at trial challenges the legal sufficiency of the evidence, we consider all of the evidence in the light most favorable to the prevailing party, indulging every reasonable inference in that party's favor. *Assoc. Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 285–86 (Tex. 1998). If there is any evidence of probative force to support the finding, i.e., more than a mere scintilla, we will overrule the issue. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998)

**Family Allowance**

In their first issue, Charlotte and Trenton argue that the trial court erred by granting Charles a $20,000 family allowance because Charles answered interrogatories showing that he had monthly income of $2,706 and monthly expenses of $1,570, thereby conclusively proving that he owned separate property adequate to provide for his maintenance.

Before a trial court approves an estate's inventory, appraisement, and list of claims, a surviving spouse may apply to the court to have the court fix a family allowance by filing an application and a verified affidavit describing the amount necessary for the maintenance of the surviving spouse for one year after the date of the death of the decedent and describing the spouse's

4

separate property. TEX. PROB. CODE ANN. § 286(b) (Vernon 2003). The trial court must fix a family allowance for the support of the surviving spouse in an amount sufficient for the spouse's maintenance for one year from the time of the testator's death with regard to the facts or circumstances then existing and those anticipated to exist during the first year after such death. *Id.* §§ 286(b), 287 (Vernon 2003). But when the surviving spouse has separate property adequate to the survivor's maintenance, the trial court may not award an allowance. *Id.* § 288 (Vernon 2003). The applicant bears the burden of proof by a preponderance of the evidence at any hearing on the application. *Id.* § 286. When determining whether a surviving spouse is entitled to an allowance and, if so, in what amount, the trial court must consider the whole condition of the estate during the first year after the spouse's death, the necessities of the surviving spouse, and the circumstances to which he or she has been accustomed. *Churchhill v. Churchhill*, 780 S.W.2d 913, 916 (Tex. App.—Fort Worth 1989, no writ) (citing *Pace v. Eoff*, 48 S.W.2d 956, 960 (Tex. Comm'n App. 1932, judgment adopted)).

The inventory, appraisement, and list of claims filed by Charlotte and Trenton listed assets in Wanda's estate with a total value of $847,601 and no liabilities. In answers to interrogatories served by Charlotte and Trenton, Charles itemized his income and expenses, and his income of $2,706 exceeded

his expenses of $1,570 by $1,136 per month. But it is undisputed that Charlotte and Trenton removed $50,000 worth of Wanda's possessions from the marital home, including necessities such as the beds, bedding, the refrigerator, dishes, cooking utensils, and most of the furniture—all of which figure into the calculus of the circumstances to which Charles was accustomed during Wanda's life. At the time of trial, Charles had spent $3,700 on necessities to "get back to where [he] could just exist" in the marital home. Moreover, he testified that before her death, Wanda contributed $2,000 per month to their joint checking account. To the extent the $50,000 of property removed from the marital home reflects the circumstances to which Charles was accustomed beyond mere necessities, his $1,136 per month—$13,632 per year—surplus income was inadequate to return him to those circumstances in the year following Wanda's death. *See Churchill*, 780 S.W.2d at 916 (holding evidence legally and factually sufficient to support allowance of $30,000 when widow had separate annual income of $34,161 per year but was accustomed to spending $18,000–24,000 per year on golf tournaments).

Charlotte and Trenton rely on *Noble v. Noble*, 636 S.W.2d 551, 552 (Tex. Civ. App.—San Antonio 1982, no writ) and *McCanless v. Devenport*, 40 S.W.2d 903, 906 (Tex. Civ. App.—Dallas 1931, no writ) to support their argument that Charles's income is conclusively adequate to provide for his

6

maintenance. Both cases are distinguishable. In *Noble*, the trial court found that the decedent's widow required $11,428 for maintenance in the year following her husband's death and had income from Social Security, a pension, and interest on savings of $6,840 per year, and the court awarded her an allowance of $4,588. 636 S.W.2d at 552. The court of appeals reversed the award, holding that the widow was not entitled to an allowance because—in addition to her income—she owned extensive separate property worth at least $40,000, including $35,000 in a savings account, $5,000 in treasury bills, and twenty-nine acres of land. *Id.* By contrast, in this case, there is no evidence that Charles owned any separate property apart from the few furnishings Charlotte left in the marital residence, some tool boxes, and the assets—Social Security, two pensions, and an annuity—that generated his monthly income. In *McCanless*, the trial court awarded a decedent's widow an allowance of $250. 40 S.W.2d at 906. The court of appeals reversed the award because the widow testified that she had collected a $989 life insurance policy upon the decedent's death, received $8.00 per month in income from rental property, and had not had to borrow money in the year following her husband's death. *Id.* Thus, the widow's testimony showed that she possessed funds far in excess of what the trial court deemed necessary for her maintenance. *See id.* But in the case before us, the trial court found that Charles required $20,000

7

for his maintenance, far more than his income after deducting expenses for necessities. Moreover, *McCanless* preceded *Pace* and does not discuss the rule articulated in the latter case that the trial court must consider not only the survivor's necessities but the conditions of life to which the survivor was accustomed before the decedent's death. *See id.*; *Pace*, 48 S.W.2d at 960.

Considering the evidence in the light most favorable to the trial court's allowance order, we hold that Charles's monthly surplus income was not—as Charlotte and Trenton contend—conclusive proof of means adequate to provide for his maintenance in the year following Wanda's death. Therefore, we overrule Charlotte's and Trenton's first issue.

**Allowance in Lieu of Exempt Property and the Wedding Ring**

In their second issue, Charlotte and Trenton argue that the trial court erred by awarding Charles both a $5,000 allowance in lieu of exempt personal property and use and possession of Wanda's wedding ring. They contend that a court may award a cash allowance in lieu of exempt property *or* set aside the property for the surviving spouse, but it may not do both.

Before the approval of the inventory, appraisement, and list of claims, a surviving spouse may apply to the court to have exempt property set aside. TEX. PROB. CODE ANN. § 271(b) (Vernon Supp. 2007). The trial court must

8

award a monetary allowance for exempt property not among the decedent's effects:

> In case there should not be among the effects of the deceased all or any of the specific articles exempted from execution . . . , the court shall make a reasonable allowance in lieu thereof. . . . The allowance in lieu of a homestead shall in no case exceed $15,000 and the allowance for other exempted property shall in no case exceed $5,000 . . . .

*Id.* § 273 (Vernon 2003).

Charlotte and Trenton argue that setting aside exempt property and a cash allowance in lieu thereof are mutually exclusive, alternative remedies; that is, they argue that if any exempt property *is* on hand, the trial court may not award an allowance in lieu of any exempt property that *is not* on hand. This interpretation is contrary to the plain meaning of section 273. Under that section, if *any* of the exempt property is not among the decedent's effects, the trial court must "make a reasonable allowance in lieu thereof." *Id.* In other words, the trial court must make an allowance for those exempt items that it cannot set aside because they are not on hand. If some exempt items are on hand, it must set those aside for the surviving spouse and award an allowance in lieu of those exempt items that are not on hand.

Charlotte and Trenton rely on *Barnett v. Barnett* for their argument that a trial court may not set aside exempt property *and* award an allowance in lieu

9

of exempt property that cannot be set aside. 985 S.W.2d 520, 532 (Tex. App.—Houston [1st Dist.] 1998), *rev'd on other grounds*, 67 S.W.3d 107 (Tex. 2001). The *Barnett* court stated broadly that "[t]he allowance is payable only if there is no homestead or other exempt property among the effects of the deceased." *Id.* (citing *Miller v. Miller*, 230 S.W.2d 237, 241 (Tex. Civ. App.—Beaumont 1950), *rev'd on other grounds*, 149 Tex. 543, 235 S.W.2d 624 (1951)). *Barnett* and *Miller* both involved homesteads and allowances in lieu of homesteads, not personal property. *Id.*; *Miller*, 230 S.W.2d at 241. The *Barnett* court held that a surviving spouse was not entitled to an allowance in lieu of the homestead because there was a homestead in the decedent's estate. 985 S.W.2d at 532. Likewise, in *Miller*, there was a homestead in the decedent's estate, and he and his widow were living there before he died; thus, his widow was not entitled to an allowance in lieu of the homestead. 230 S.W.2d at 241. Thus, *Barnett* and *Miller* stand for the proposition that under section 273, a surviving spouse is not entitled to an allowance in lieu of a homestead if there is a homestead in the estate. Neither case speaks to the kind of property involved in this case—exempt *personal* property—and neither stands for the proposition that the presence of *any* exempt personal property in an estate precludes an allowance for exempt personal property that is not on hand. To the extent that the broad statement in *Barnett* suggests otherwise,

10

it is dictum and contrary to the express language of section 273, and we decline to apply it to the facts of this case.

Because section 273 authorized the trial court to set aside the exempt personal property that was on hand — the ring — *and* award Charles an allowance in lieu of the exempt personal property that was not on hand, we hold that the trial court did not err by so doing. We overrule Charlotte and Trenton's second issue.

### Life Estate in Wanda's Wedding Ring

In their third issue, Charlotte and Trenton argue that the trial court erred by granting Charles a life estate in Wanda's wedding ring. The trial court ordered that "Charles Rhea shall have use and possession of the wedding ring worn by the Decedent during his lifetime as part of the exempt property. The Court makes no determination of ownership or of the character of the ownership of the ring." Charlotte and Trenton contend that the probate code authorizes a survivor's use and possession of exempt personal property only until final settlement of the estate.

Probate code section 278 provides as follows:

If, upon a final settlement of the estate, it shall appear that the same is solvent, the exempted property, except the homestead or any allowance in lieu thereof, shall be subject to partition and distribution among the heirs and distributees of such estate in like manner as the other property of the estate.

11

TEX. PROB. CODE ANN. § 278 (Vernon 2003).  Thus, a surviving spouse can retain possession of tangible exempt property under the "use and benefit" provision of section 271, but when the administration terminates, the decedent's interest in these items must pass to the decedent's heirs or devisees. *Id.*; *Bolton v. Bolton*, 977 S.W.2d 157, 159 (Tex. App.—Tyler 1998, no pet.) (holding that trial court erred by granting surviving spouse fee simple title to estate's exempt property).

The trial court's order is captioned in part "Order . . . Setting Aside Exempt Property . . . for Use and Benefit of Surviving Spouse."  The only property set aside for Charles's use and benefit is the ring.  Thus, the trial court clearly set aside the ring under probate code section 271, but section 278 precludes the grant of a life estate in exempt property set aside under section 271.  *See* TEX. PROB. CODE ANN. §§ 271, 278.  Thus, the trial court erred by granting Charles a life estate in the ring under section 271.

Charles argues that the ring is presumptively community property because it was acquired during the marriage and that he is therefore entitled to a life estate in the ring.  In fact, Charles testified that he bought the ring before the wedding and gave it to Wanda on their wedding day.  He further testified that they purchased a diamond for the ring several months later, with each of them contributing half of the diamond's cost.  But the trial court specifically reserved

12

the question of the ring's ownership; therefore, the issue of whether Charles is entitled to a life estate in the ring because it is community property is not ripe for our review.

We sustain Charlotte and Trenton's third issue.

**Conclusion**

Having overruled Charlotte and Trenton's first and second issues and sustained their third issue, we strike the words "during his lifetime" from the part of the trial court's order granting Charles the use and possession of Wanda's wedding ring, and we affirm the order as modified.

ANNE GARDNER
JUSTICE

PANEL A:   DAUPHINOT, GARDNER, and MCCOY, JJ.

DELIVERED: June 5, 2008