COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                                 NO.
2-09-018-CV

 

 

JEFFREY IRWIN SUGGS                                                                   APPELLANT

 

                                                             V.

 

DESIREE LANELLE
SUGGS                                                                 APPELLEE

 

                                                       ------------

 

                  FROM
THE 271ST DISTRICT COURT OF WISE COUNTY

 

                                                       ------------

 

                                      MEMORANDUM OPINION[1]

 

                                                       ------------

This
appeal stems from the divorce of Appellant Jeffrey Irwin Suggs and  Appellee Desiree Lanelle Suggs.  In
three issues, Jeff complains about child support, the division and
characterization of the community estate, and the
imposition of a lien on his separate property. 
Because we hold that the trial court did not err or abuse its
discretion, we affirm the trial court=s
judgment. 

Background Facts

The
couple has two minor children; child support is the only child-related issue on
appeal.  Jeff runs his own business,
North Texas Frame and Alignment, in buildings and on land that he purchased
from his father before the marriage.  At
issue are the characterization and value of the business as well as the
community=s
claim against Jeff=s separate estate for
payments made by the community on the note for the separate real property from
which Jeff operates the business.

No Findings of Fact and
Conclusions of Law 

No
findings of fact and conclusions of law were filed or requested.  In a trial to the court in which no findings
of fact or conclusions of law are filed, the trial court=s
judgment implies all findings of fact necessary to support it.[2]  When a reporter=s
record is filed, however, these implied findings are not conclusive, and an
appellant may challenge them by raising both legal and factual sufficiency of
the evidence issues.[3]  Where such issues are raised, the applicable
standard of review is the same as that to be applied in the review of jury
findings or a trial court=s
findings of fact.[4]  The judgment must be affirmed if it can be
upheld on any legal theory that finds support in the evidence.[5]

The Business

In
his first issue, Jeff contends that the trial court abused its discretion in
dividing the community estate, focusing on the business.  Initially, Jeff contends that the trial court
improperly characterized the business as community property instead of his
separate property.  AProperty
possessed by either spouse during or on dissolution of marriage is presumed to
be community property.@[6]  This presumption can be rebutted by clear and
convincing evidence.[7]  Clear and convincing evidence is defined as
that Ameasure
or degree of proof that will produce in the mind of the trier
of fact a firm belief or conviction as to the truth of the allegations sought
to be established.@[8]  If the evidence shows that separate and
community property have been so commingled as to defy resegregation
and identification, the community presumption prevails.[9]

Desiree
discussed the business:

A.      All the shop tools; it=s power lifts, the
jackCnot hammers, butCit=s a head rack, arches
and springs.  It has a frame alignment
machine; it has a compressor, Matco tools, the nice
ones; all the tools that=s in it, several
hoses, different items that were used in his shop, that were originally
purchased with a shop loan.  And some of
it had been purchased since then.

 

Q.      And so is it your understanding that at
the time that he purchased the real property that he purchased the equipment,
as well?

 

A.      Yes, ma=am.

 

Q.      As a matter of fact, is there a UCC security agreement showingC 

 

A.      Yes, ma=am.

 

Q.      Ctools in his nameC

 

A.      Yes, ma=am.

 

Q.      Clarge equipment?

 

Does he also have some retained earnings
according to his inventoryC

 

A.      Yes.

 

Q.      Cdocuments?

 

. . . Has Jeff ever made any representations
to you about the value of that business?

 

A.      He has said it=s worth over four, so
about $300,000.00.

 

Q.      So you believe that there is value other
than just the real estate?

 

A.      Oh, yes, ma=am.

. . . . 

 

Q.      Where did you come up with this value of
$62,500.00 on his business?

 

A.      On this business, or on the tools andC 

 

Q.      I don=t know.

 

You listed it on your sworn inventory as
North Texas Frame & Alignment; $62,500.00?

 

A.      That would be parts, tools, and machinery
inside.  

 

We took an amount based on the low 50 and the
high 75, and cut it in half because ofCsome of thoseC

 

To replace the alignment Calignment machine and
the toolbox, all the tools that=s in it, the press,
the air jacks, all of the equipment that is in there, air hoses, impact machine
compressor, all of those items, and every tool that=s in that shop that
belongs to North Texas Frame & Alignment, Jeff Suggs, would be impossible.

 

Q.      Okay.

 

A.      That was our guesstimation.

 

Q.      Well, and what did you base that guesstimation upon?  

 

What knowledge do you have that let=s you determine the
cost of those kinds of tools?

 

A.      Just different things.  We went on‑line, and informationC 

 

Q.      So basicallyC 

 

A.      CJeff has told me in the past.

 

Q.      Okay. 
Basically, you and your lawyer came up with that number; right?

 

A.      That is the information Jeffrey and I had
discussed in the past.

 

Desiree also testified that
she believed that Jeff owned the business, that Jeff purchased the business
when his father filed for bankruptcy, and that she had never seen any evidence
that Jeff=s
father owned any of the equipment or any portion of the business.

Jeff
testified that he bought the business in December 1995, before the marriage and
after his father had declared bankruptcy; Jeff got a loan to pay off the loan
his father had of around $83,000.  Jeff
testified that he has run the business since that time.  But then he stated that he bought only the
buildings and real estate; the equipment was all his father=s,
and his father had installed it in 1983. 
Jeff then stated, AI totally refurbished it;
not in the top of the line or nothing.@  He then again stated that the equipment
belongs to his father but that he owes his father Afor
it later on@
when he Apays
everything off.@  Later, Jeff testified that he has never paid
rent for the tools but that he is Asupposed
to.@

Jeff
also admitted that some of the equipment appears on a security agreement for a
loan and that he signed the agreement, but he claimed bank error.  Petitioner=s
Exhibit 11, a UCC statement signed by Jeff, includes
an asset schedule showing that tools and equipment with a cost basis of $8,610
and vehicles with a cost basis of $22,074 were put into service after the date
of the marriage.

Jeff=s
father did not testify.

Given
all the evidence, we cannot conclude that the trial court erred by
characterizing the business as community property. 

Jeff
also contends that no evidence supports the valuation of the business.  We may sustain a legal sufficiency challenge
only when (1) the record discloses a complete absence of evidence of a vital
fact; (2) the court is barred by rules of law or of evidence from giving weight
to the only evidence offered to prove a vital fact; (3) the evidence offered to
prove a vital fact is no more than a mere scintilla; or (4) the evidence
establishes conclusively the opposite of a vital fact.[10]  In determining whether there is legally
sufficient evidence to support the finding under review, we must consider
evidence favorable to the finding if a reasonable factfinder
could and disregard evidence contrary to the finding unless a reasonable factfinder could not.[11]

Again,
Jeff did not request findings of fact and conclusions of law, so we do not know
what value the trial court attributed to the business.  Given Desiree=s
testimony explaining how she arrived at the value of $62,500 for the business,
however, we cannot conclude that the trial court abused its discretion to the
extent that it also valued the business at $62,500. 

Finally,
Jeff complains that the trial court should have divided the community estate in
a different manner to eliminate the need for Jeff to pay Desiree in cash.  Trial courts are afforded wide discretion in
dividing marital property upon divorce; therefore, a trial court=s
property division may not be disturbed on appeal unless the complaining party
demonstrates from evidence in the record that the division was so unjust and unfair as to constitute an abuse of
discretion.[12]  The issue therefore is not whether the trial
court could have divided the estate without requiring Jeff to pay Desiree in
cash but whether some probative evidence supports the trial court=s
decision.[13]  The evidence shows that the community estate
paid $52,000 on Jeff=s separate real estate note
and that Jeff had between $124,000 and $130,000 equity in his separate real
estate.  Further, Jeff stipulated that
the community had a $109,032 claim against his separate estate.  Accordingly, we hold that the trial court did
not abuse its discretion by ordering Jeff to pay Desiree in cash.  We overrule Jeff=s
first issue.

Lien on Separate Property

In
his second issue, Jeff contends that the trial court erred by imposing an
encumbrance on his separate property to secure Jeff=s
payment of $37,700 to Desiree.  As the
Texas Supreme Court has explained,

When dividing marital
property on divorce, trial courts may impose equitable liens on one spouse=s separate real
property to secure the other spouse=s right of reimbursement for community
improvements to that property. 
Although courts may impress equitable liens on separate real property to
secure reimbursement rights, they may not impress such liens, absent any
compensable reimbursement interest, simply to ensure a just and right division.[14]

 

The
decree provides,

 

Owelty of Partition

 

The Court, finds that
it is necessary to impose an encumbrance for owelty
of partition against the entirety of the property to secure the payment of the
debt resulting from the award.

 

. . . . 

 

The purpose of the encumbrance is to secure
the payment of the debt of Respondent in favor of Petitioner of $37,700.00,
resulting from the award of the real property in this divorce proceeding.

 

Jeff stipulated to an
economic contribution of $109,032 against his separate real property.  We therefore cannot conclude that the trial
court erred by encumbering that real property to assure Jeff=s
payment to Desiree.  We overrule Jeff=s
second issue.

Child Support

In
his third issue, Jeff contends that the trial court abused its discretion by
ordering him to pay $905.75 monthly to Desiree for child support because the
trial court improperly concluded that Jeff=s
annual gross income is $60,000.  A trial
court=s
decision on child support will not be overturned absent an abuse of discretion.[15]  To determine whether a trial court abused its
discretion, we must decide whether the trial court acted without reference to
any guiding rules or principles; in other words, we must decide whether the act
was arbitrary or unreasonable.[16]  An appellate court cannot conclude that a
trial court abused its discretion merely because the appellate court would have
ruled differently in the same circumstances.[17]

An
abuse of discretion does not occur when the trial court bases its decisions on
conflicting evidence.[18]  Furthermore, an abuse of discretion does not
occur as long as some evidence of substantive and probative character exists to
support the trial court=s decision.[19]

When
asked by her trial counsel what she believed Jeff earns, Desiree testified,

He
has told me previously that he makes more than me, so based on that, and based
on what he makes, plus you add back the gas, or parts of the gas, and his
lunches that he charges to the business, as well as hunting trips, et cetera,
that he charges to the . . . businessCor puts on the
business, and he takes employees or friends, customers, I would say that he
makes about $60,000.00 plus.

 

She further testified that
the $60,000 figure includes Athe
gas, and other items, and cash, and any kind of trades, et cetera@ as
well as Arentals,
property where he has extra income that=s
not necessarily reported for these buildings.@  She also testified that Ahe
reports all of his gas, his lunches, meals, et cetera, under company expenses,@
that he accepts cash and trades out work, and that she believes that $60,000 is
an accurate gross figure after expenses. 
On cross-examination, she explained,

We
worked full days.  You have a lower
income, and when you have months with your contract laborers, et cetera, then
you can write it off to go to lunch.  Or
if you purchase gas for your vehicles, you can write off the gas.  I do understand that that is permissible when
you=re a
sole proprietor.  And as a sole
proprietor, you write all those items off separately.

I
also understand that he went on hunting trips; there=s
several of those with contract laborers, or customers where the gas or the
dinner was included in the company expense.

. .
. . 

I understand his owner=s draw is not
necessarily his true income.

 

Finally, she testified that
her information was based on what Jeff had told her and on what she had seen.

Jeff
testified that he makes $520 per week after taxes, or about $34,000 per
year.  He also said that there is never
any money left in the business at the end of the year that he could distribute
to himself.  The
parties=
2007 joint tax return shows a net income for the business of about $5,400.  Jeff testified that his accountant told him
that he had to pay taxes on $27,000 in 2007. 
The business=s profit and loss statement
for 2007 shows a net income of $48,535.73. 
Again, there are no findings of fact and conclusions of law.

Based
on the evidence, we hold that the trial court did not abuse its discretion to
the extent that it resolved the conflicts in the evidence in favor of Desiree
and concluded that Jeff=s annual gross income was
$60,000.  Jeff does not otherwise
complain about the child support award. 
We overrule his third issue.

Conclusion

Having
overruled Jeff=s
three issues, we affirm the trial court=s
judgment.

 

 

 

LEE ANN DAUPHINOT

JUSTICE

 

PANEL:  DAUPHINOT, MCCOY, and MEIER, JJ.

DELIVERED:  August 12, 2010











[1]See Tex. R. App. P.
47.4.





[2]Pharo v. Chambers County, 922 S.W.2d 945, 948 (Tex. 1996); In re Estate of Rhea,
257 S.W.3d 787, 790 (Tex. App.CFort Worth 2008, no
pet.).





[3]Tex. R. App. P.
34.6(c)(4); BMC Software Belg., N.V.
v. Marchand, 83 S.W.3d
789, 795 (Tex. 2002); Estate of Rhea, 257 S.W.3d
at 790.





[4]Roberson
v. Robinson,
768 S.W.2d 280, 281 (Tex. 1989).





[5]Worford v. Stamper, 801 S.W.2d 108, 109 (Tex. 1990); In re Guardianship of Boatsman, 266 S.W.3d 80, 85
(Tex. App.CFort Worth 2008, no pet.).





[6]Tex.
Fam. Code Ann. ' 3.003(a) (Vernon
2006).





[7]Id. ' 3.003(b).





[8]Id. ' 101.007 (Vernon
2008); Transp. Ins. Co. v. Moriel, 879 S.W.2d 10, 31 (Tex. 1994).





[9]Estate
of Hanau v. Hanau,
730 S.W.2d 663, 667 (Tex. 1987).





[10]Uniroyal Goodrich
Tire Co. v. Martinez,
977 S.W.2d 328, 334 (Tex. 1998), cert. denied,
526 U.S. 1040 (1999); Robert W. Calvert, "No Evidence" and
"Insufficient Evidence" Points of Error, 38 Tex. L. Rev. 361, 362B63 (1960).





[11]Cent. Ready
Mix Concrete Co. v. Islas, 228 S.W.3d 649, 651 (Tex. 2007); City of Keller v.
Wilson, 168 S.W.3d
802, 807, 827 (Tex. 2005).





[12]Jacobs
v. Jacobs,
687 S.W.2d 731, 733 (Tex. 1985).





[13]See In re S.A.A., 279 S.W.3d 853, 857 (Tex. App.CDallas 2009, no
pet.).





[14]Heggen v. Pemelton, 836 S.W.2d 145,
146 (Tex. 1992) (citations omitted).





[15]Rodriguez
v. Rodriguez,
860 S.W.2d 414, 415 (Tex. 1993).





[16]Low
v. Henry,
221 S.W.3d 609, 614 (Tex. 2007); Cire v. Cummings, 134 S.W.3d
835, 838B39 (Tex. 2004).





[17]E.I. du Pont de
Nemours & Co. v. Robinson, 923 S.W.2d 549,
558 (Tex. 1995); see also Low, 221 S.W.3d at
620.





[18]In re Barber, 982 S.W.2d 364,
366 (Tex. 1998) (orig. proceeding).





[19]Butnaru v. Ford Motor Co., 84 S.W.3d 198, 211 (Tex. 2002).